Argued December 21, 1937; affirmed February 23, 1938

# McGUIRE *v.* SINNETT
(76 P. (2d) 472)

Department 2.

*B. G. Skulason* and *Francis F. Hill*, both of Portland (Skulason & Skulason and Francis F. Hill, all of Portland, on the brief), for appellant.

*Phelps & Burdick*, of Portland, for respondent.

BAILEY, J. On May 23, 1936, the defendant engaged the plaintiff, a duly registered real estate broker of the state of Oregon, to act as his agent for the sale of certain residential property, owned by the defendant, in the city of Portland. The contract of employment was on the usual printed form of exclusive agency agreement of the Portland Realty Board, but across the face of it were written in ink the words "Non Exclusive" and lines were drawn in ink through certain provisions. After setting forth the standard rates of commission fixed by the Portland Realty Board,—the commission on city property being shown as five per cent on the first $60,000—the contract as far as material here is as follows:

"Portland, Oregon, May 23, 1936.
"To Frank L. McGuire:

"For value received, you are hereby employed and authorized to offer for sale, exchange or conveyance, and are given the exclusive right to sell, exchange or convey the property described on the back hereof at the price and terms there noted, or at such price and terms as I may hereafter authorize or agree to. You are hereby authorized to accept a deposit on the purchase price of said property and, in my name (or otherwise) to execute and deliver a binding, written contract for the sale, exchange or conveyance thereof. In the event of any sale, exchange or conveyance of said property during the life of this contract, or that you find a buyer ready and willing to enter into a deal or contract for said price and terms or on such other terms and price as may be agreed to by me, or place me in touch with a buyer to or through whom, within ninety days after the expiration hereof, I may sell,

exchange or convey said property, or if you are the procuring cause of said sale, exchange or conveyance, * * * I hereby agree to pay you in cash for your services in connection with this contract, the regular commission fixed by the Portland Realty Board (as above scheduled), and that this contract may also be enforced by any other remedy legal or equitable and, in case of suit or action on this contract, will in addition thereto pay such additional sum as the court may adjudge reasonable for plaintiff's attorney's fees and court costs.

*   *   *   *   *

"* * * this agreement expires on Aug. 23, 1936, but will continue in force thereafter as a non-exclusive listing in every respect as above set forth until canceled by owner in writing.

*   *   *   *   *

"E. C. Sinnett (Seal)."

On the back of the card appear the description of the property by street number, the sale price of $9,750, the amount of down payment, and other details concerning the house and lot offered for sale.

The complaint alleges the making of the contract and the terms and conditions as above shown. It further alleges that during the time the said contract was in force and effect the "plaintiff did procure one Mr. and Mrs. Bohmann, who were ready, able and willing to purchase said premises, and did place the defendant in touch with said Mr. and Mrs. Bohmann and said premises were sold by the defendant to said Mr. and Mrs. Bohmann, and there became due and owing from the defendant to the plaintiff" a commission of five per cent of the purchase price of $9,750. It is also alleged that $125 is a reasonable amount to be allowed as attorneys' fees.

The defendant admits the allegations of the complaint as to execution of the contract and the legal

effect thereof as set forth in the complaint, but denies the remainder of the complaint, excepting the allegation that the agreement contained a provision for the payment of attorneys' fees.

The case was tried to the court without a jury. The court found that the contract was made, and:

"That while said contract was in force and effect said plaintiff did procure a purchaser, namely: Louis Bohmann, and did place the defendant in touch with said purchaser while said contract was in full force and effect and said purchaser was ready, able and willing to purchase said premises, and did, while said contract was in full force and effect, purchase said premises from said defendant at a price agreeable and acceptable by said defendant, of $8,600, and that the plaintiff was the procuring cause of said sale and there became due and payable to the plaintiff 5% of said $8,600.00, or four hundred thirty ($430.00) dollars."

The court further found that $100 was a reasonable amount to be allowed as attorneys' fees.

At the time of entering into the contract, the defendant instructed the plaintiff that before showing the house he should arrange with the defendant or with the tenant for such inspection. On August 19, 1936, Mr. Goldenberg, a real estate agent connected with the plaintiff's office, called the defendant's home and when he was unable to find him there, advised Mrs. Sinnett that he had a prospective purchaser to whom he wished to show the property the following day. During the next day Goldenberg, accompanied by Mr. and Mrs. Bohmann and a friend of theirs, met the defendant at his residence. The defendant's home and the house that he had for sale had both been built by defendant. After showing the prospective purchaser through his home, the defendant went with Goldenberg, the Bohmanns and their friend to the property which he

had listed with the plaintiff for sale. They did not find the tenants at home and could not gain entrance to the house, but they remained on the premises from one-half to three-quarters of an hour. During that time as well as during the interview at defendant's home, the question of purchase of the property was discussed by the parties at some length. The Bohmanns expressed a desire to inspect the interior of the house, and the defendant promised Goldenberg that he would arrange for such inspection the following day and would notify Goldenberg of the time appointed.

Mr. Bohmann, after reading an advertisement of a house for sale in Portland by Cooley-Reinhart Co., which from the description seemed to meet his requirements, got in touch with that firm and was taken by one of its agents and shown the identical property that had been shown him the previous day by Goldenberg. The advertisement did not indicate the location of the property and when Bohmann was taken there by the agent of Cooley-Reinhart Co. he told the agent that the property had been shown to him the previous day by Goldenberg.

When the defendant did not telephone Goldenberg the day after the latter showed the property to the Bohmanns, Goldenberg, about 4 o'clock that afternoon, called Bohmann and was advised by the latter that he had been shown the Sinnett property that day by Cooley-Reinhart Co. On the same day or the following day Mr. Parrott, the plaintiff's sales manager, telephoned the defendant, told him that Cooley-Reinhart Co. had shown the property to Bohmann and stated to him that the Bohmanns were "our customers". The defendant answered that what he was interested in was "who brought the earnest money receipt".

The property here involved was listed by the defendant with the plaintiff at a price of $9,750, on May 23, 1936. The defendant on August 3, 1936, entered into a contract with Cooley-Reinhart Co. similar to the one he had with the plaintiff, except that the property was therein listed at $9,250. After the Bohmanns had twice been shown the property by Cooley-Reinhart Co., Bohmann made an offer of $8,500, and after some negotiating the defendant sold the property to him for $8,600, on an understanding with Cooley-Reinhart Co. that the defendant was to receive $8,300 net, and that any amount above that figure might be retained by Cooley-Reinhart Co. as brokers' commission.

The defendant did not see the Bohmanns from the time that he was introduced to them by Goldenberg until after the agent of Cooley-Reinhart Co. had arranged for the sale of the property to them for $8,600. Under date of September 1, 1936, Bohmann made an offer to Cooley-Reinhart Co. of $8,500 for the property and deposited $250, for which he was given an earnest money receipt.

Before any commission had been paid by the defendant to Cooley-Reinhart Co. the plaintiff in a letter dated September 5 wrote to the defendant, calling his attention to the fact that the plaintiff had put him in touch with the Bohmanns and that plaintiff would expect a commission from the defendant if the property was sold to the Bohmanns.

Previous to final consummation of the deal with the Bohmanns, the defendant on September 9, 1936, exacted from Cooley-Reinhart Co. a written agreement that in consideration of the payment by defendant of commission to Cooley-Reinhart Co. for the sale of the property by it, the Cooley-Reinhart Co., in the event that the plaintiff in this case should institute action against

the defendant to recover commission for the sale of the property and prevail, would satisfy any judgment recovered in such action against defendant and pay all expenses of the litigation.

Most of the foregoing statement is derived from evidence that was uncontradicted. Bohmann testified that he had a talk with Goldenberg shortly after the latter showed him defendant's property, and that he then advised Goldenberg of the fact that he had been shown the property by Cooley-Reinhart Co. the day after Goldenberg showed it to him, but he was not positive whether the conversation was had on the day the property was shown to him by Cooley-Reinhart Co. or a day or two later. The defendant, who is a practicing attorney in the city of Portland, testified that he had not heard from the plaintiff's office after the day he met the Bohmanns until he received the letter of September 5. He admitted that he promised to call Goldenberg the next day after meeting the Bohmanns, and when asked why he did not do as promised, he said: "Because I figured if he was interested enough in the sale and enough of a salesman, he would call me. I didn't figure it was incumbent upon me to make the sale for him."

From a judgment in favor of the plaintiff, the defendant appeals to this court. The only question here involved is the sufficiency of the evidence to support the findings of the circuit court.

The contract which is the basis of this action, the material parts of which are hereinabove set out, provides in part as follows: "In the event . . . that you find a buyer ready and willing to enter into a deal or contract for said price and terms or on such other terms and price as may be agreed to by me, or place me in touch with a buyer to or through whom,

within ninety days after the expiration hereof, I may sell, exchange or convey said property, or if you are the procuring cause of said sale, exchange or conveyance, . . . I hereby agree to pay you in cash for your services in connection with this contract, the regular commission fixed by the Portland Realty Board (as above scheduled) . . ." It is further provided that the agreement expires August 23, 1936, three months after the date of its execution.

The plaintiff did place the defendant in touch with the Bohmanns, who became the purchasers of the property, on or about August 19, 1936, which was prior to the date of the expiration of the contract, and the sale was made by the defendant to the Bohmanns on or about September 9, 1936, which was within ninety days after the expiration date of plaintiff's contract.

It is the contention of the appellant, defendant in the circuit court, that where a real estate broker is not given an exclusive listing of real estate offered for sale and the property is listed with more than one broker, before any broker is entitled to a commission he "must produce a purchaser ready, willing and able to buy, or be the procuring cause of the sale"; that in the instant case the plaintiff did not produce a purchaser ready, willing and able to buy, inasmuch as he had not come to any understanding with Bohmann as to the purchase of the property; and that Cooley-Reinhart Co. was the procuring cause of the sale of the property by defendant to Bohmann.

In the case before us, the broker is entitled to his commission in one of the three following instances: (1) if he found a buyer ready and willing to enter into a contract with the defendant on terms and price agreed to by the defendant; (2) if he placed the defendant in touch with a buyer to whom the defendant sold the

property during the life of the contract or within ninety days after the expiration thereof; or (3) if he was the procuring cause of the sale.

■ The plaintiff did present Bohmann to the defendant as a prospective purchaser of the property. This was done before the expiration of the contract, and the sale was actually made to Bohmann by the defendant within the time limited by the contract. The plaintiff did not abandon negotiations for the sale of this property to Bohmann. His efforts to conclude the sale were frustrated by the action of the defendant in failing to arrange for an inspection of the interior of the house by plaintiff's agent and the prospective purchaser and in encouraging and aiding Cooley-Reinhart Co. to consummate a sale of the property to Bohmann after the plaintiff had presented Bohmann to the defendant as a prospective purchaser. It was the plaintiff who placed the defendant in touch with the Bohmanns, within the meaning of the above quoted provisions of the contract, and since the property was sold by the defendant to Bohmann under the conditions hereinbefore described, the plaintiff became entitled to his commission regardless of whether he himself sold the property to Bohmann or whether he was the procuring cause of the sale: *Clarke v. Blackfoot Waterworks,* 39 Idaho 304 (288 P. 326); *Englemann v. Auderer,* 10 La. App. 136 (121 So. 194); *Moore v. Holman Real Estate Co.,* 129 Ark. 465 (196 S. W. 479).

In *Clarke v. Blackfoot Waterworks,* supra, the listing agreement provided that the owner would pay the broker a commission in the event the property should be sold within twelve months after the expiration of the contract, to any individual, firm or corporation with whom the broker had opened negotiations or been in correspondence during the life of the contract. With

reference to the right of the broker to recover a commission, the court said:

"Under this provision of the contract, it was not necessary that the property be sold as the result of the efforts of appellant. To recover, he was only required to prove that he *opened negotiations* or *had been in correspondence* with the city, to which the property was sold within the time provided in the agreement."

The contract involved in *Moore v. Holman Real Estate Co.,* supra, provided that if the property should be sold after the termination of the exclusive agency, "on information secured through this agency," the owner was to pay the broker the commission specified in the contract. It was the defendant's contention that in order to entitle the broker to recover there must be a finding that the broker was the procuring cause of the sale. In answering this argument the court said:

"* * * Such, indeed, would be the law under the testimony of appellant but for the recitals of the contract set out above.

"This contract says nothing about procuring cause, and was evidently drawn with the intention of eliminating that question in the event an issue arose between the agent and the owner over a claim of commissions."

The opinion in *Englemann v. Auderer,* supra, states that:

"The contract provided that Englemann should have a fixed time within which to sell the property, but that, if within three months after the termination of his contract, it was sold to a purchaser with whom, during the existence of the contract, Englemann had been negotiating, the commission stipulated for in the contract would be paid to Englemann."

The court there held that although the property was listed with another agent who apparently had been

active in effecting the sale of it, inducing the purchaser to buy, nevertheless since the defendant had sold the property to a prospective purchaser with whom the plaintiff had been negotiating, the plaintiff was entitled to his commission.

In the case before us the trial court also found that the plaintiff was the procuring cause of the sale of the property to Bohmann. There is, as hereinbefore pointed out, little conflict in the evidence. Taking the testimony in the light most favorable to the plaintiff, we are of the opinion that there is sufficient evidence in the record to support this finding. In this connection, we find in 4 R. C. L. 320 the following statement:

"Where a prospective purchaser has been introduced to the owner by one broker and the negotiations are pending and have not fallen through, the owner can not, with knowledge of the facts complete the purchase with another agent, and avoid his liability for the commission due to the first broker. Thus the law will not permit one broker who has been intrusted with the sale of land, and is working with a customer whom he has found, to be deprived of his commission by another agent stepping in and selling to the customer for a price less than the first broker is empowered to receive. But if a broker who has procured a purchaser reports his offer to his principal without identifying the person from whom it comes, he can not recover commissions in case of a subsequent sale through another broker at the same price to the same purchaser, unless it appears that the principal knew these facts or that notice was given him by the broker before the completion of the contract and payment of commissions to the second broker."

In *Fisher v. Hanson*, 99 Conn. 703 (122 Atl. 906), it was held:

"It is the law that if a broker directly or indirectly has brought a prospective customer procured by him

in contact with the owner, and the owner within a short time personally or by another agent effects a sale at a reduced price to such customer of the broker, and the relation of purchasers as customers of the broker had not been expressly broken off, or the matter of the purchase ceased to be held under consideration by the purchasers before they entered into negotiations with the owners or another agent, then the purchasers are still the customers of the broker, and he is the procuring cause of the sale.

"In Butler v. Ouwelant, 90 Conn. 439, 97 Atl. 310, we cited with approval the law as stated in Jennings v. Trummer, 52 Or. 149, 96 Pac. 874, 23 L. R. A. (N. S.) 164, 132 Am. St. Rep. 680, to the following effect: Where a broker is first in negotiation with the customer he will continue to sustain that relation until it is expressly broken off, or the matter of the purchase has ceased to be held under consideration by the purchaser. See, also, Lincoln v. McClatchie, 36 Conn. 136."

This court, in *Jennings v. Trummer,* 52 Or. 149 (96 P. 874, 23 L. R. A. (N. S.) 164, 132 Am. St. Rep. 680), said:

"Whatever may be the rights of a real estate broker who takes a customer away from another and closes a sale between such customer and the owner, if done without the aid or connivance of the owner, yet if the owner, with knowledge of the facts, deals with the customer of the first broker, even through another agent, he will be liable to the first broker . . ."

In this connection, see also: *McCarthy v. McCarthy,* 49 R. I. 200 (142 Atl. 142); *Gallagher v. Paris,* 53 R. I. 186 (165 Atl. 360); *Stone v. Cox,* Tex. Civ. App. (244 S. W. 620); *Warshawsky v. Traub,* 156 Md. 597 (144 Atl. 833); *Moore v. Chadd,* 166 Okl. 244 (27 P. (2d) 351); *Hannan Real Estate Exchange v. Davis,* 238 Mich. 257 (213 N. W. 61); *Provost v. Burgin,* 287 Mass. 273 (191 N. E. 362); *Hutson v. Stone,* 119 S. C. 259

(112 S. E. 39); *Walker v. Bennett & Myers Investment Co.*, 79 Colo. 170 (244 P. 465); *Ness v. Todd,* 86 Colo. 403 (282 P. 250); *Leadville Mining Co. v. Hemphill,* 17 Ariz. 146 (149 P. 384); and the annotation in 43 A. L. R. at page 1119.

We have given careful consideration to all the cases cited by the appellant. Not any of them are based on facts similar to those in the case at bar.

We find no error and the judgment appealed from is therefore affirmed.

BEAN, C. J., and RAND and KELLY, JJ., concur.