Argued February 4, reversed May 13, 1953

# WITHERS ET AL. *v.* SOHRWEID
### 257 P. 2d 267

*Carl H. Francis,* of Dayton, argued the cause and filed a brief for appellant.

*W. H. Dashney,* of McMinnville, argued the cause for respondents. On the brief were Marsh, Marsh and Dashney, of McMinnville.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN, LUSK and PERRY, Justices.

LATOURETTE, C. J.

Defendant was sued by plaintiffs for a real estate commission. After a jury trial resulting in a verdict in favor of the plaintiffs, defendant appealed.

Defendant assigns as error the refusal of the court to direct a verdict in his favor on the ground of absence of proof.

On December 8, 1949, defendant, the owner of 127 acres in Yamhill county, gave to the plaintiffs a non-exclusive listing, in writing, of his property for the purpose of sale, for a selling price, free of encumbrances, of $45,000, including equipment, or $35,000 without equipment or crop, the listing contract containing the following language:

"In the event that you find a buyer, ready and willing to enter into a deal for said price and terms, or such other terms and price as I may accept, or that you place me in touch with a buyer to whom at any time within 90 days after the termination of this contract I may sell, transfer or convey said property, I hereby agree to pay you in cash for your services in connection with this contract a commission equal in amount to 5% of the sale price of the property. * * *."

On March 23, 1950, the plaintiffs presented de-

fendant an earnest money receipt signed by Emory J. Hess, wherein and whereby said Hess agreed to purchase defendant's property with equipment for $40,000.

Concerning the presentation of such receipt to the defendant, Mr. Cramer, of the plaintiffs, testified as follows:

"A —and he took it and started reading it over, and in reading it—both Mr. Withers and I kept quiet and gave him a chance to read it, and in reading it he seemed to miss the price of $40,000 —I don't know why, but he seemed to miss that figure, and he went on down and got to counting up what the payments to be made at the different times would amount to, and he said, 'How about the other $5,000?'—and I said, 'Well, the offer as you see there, is $40,000.'—and he seemed to be angry or pretended to be angry that we brought him the offer of $40,000. The statement that we tried to trick him,—there is nothing to that.

"* * * * * *

"Mr. Marsh: What next took place? The Witness: He said the price was $45,000, and I said we understood that but as brokers our duty and obligation was to submit any offer that was reasonably near the price. There's no harm to submit it, and we did not urge him to sign it.

"Q And he did not sign it? A He did not sign it,—and he said, "The price is $45,000, and I won't take a nickel less than that"—and we stated that of course if he stayed on the place till the 15th of June that he would also get the additional income from the place and from the cows; and he said, 'Yes, I know, but I would be working for that, I would be earning it'—so he would not consider it."

According to the testimony of plaintiffs, they thereupon notified Mr. and Mrs. Hess that the defendant

had turned down the submitted offer, whereupon they importuned the Hesses to increase their offer, which they declined to do.

Mr. Withers, one of the plaintiffs, testified as follows:

"Q At that time, was any conversation had with reference to the Sohrweid property? A You mean the second trip?

"Q —between yourself and the Hesses? A Yes. We asked them about coming up on their price, and they said Nothing doing.

"* * * * *

"Q In the meantime you were trying to sell them the Turley property? A We had a listing on it. We were trying to sell them anything we could.

"Q The only time you returned to the Sohrweid property, according to your testimony, was when you went out attempting to collect a commission from Mr. Sohrweid? A That's right. We did not have any other ground for it."

It is admitted by plaintiffs that, at the time they entered into the agreement with defendant for the sale of his property, they knew that defendant had listed the same with other real estate brokers.

The undisputed evidence shows that at a later date Mr. Richard Hess, nephew of Mr. and Mrs. Hess, noticed an advertisement in the newspaper by Gearin & Company offering a dairy ranch for sale, whereupon contact was made by the Hesses with said company, and it was found that the company had for sale defendant's farm. On April 10, without any effort on the part of defendant, a deal was closed between the defendant and Lena Hess through the office of Gearin & Company for the purchase of defendant's property for the sum of $42,500.

To determine whether or not the court erred in refusing to direct a verdict in favor of defendant, it is necessary to construe the contract between the parties.

■ The contract provided a purchase price of $45,000, and when plaintiffs submitted the Hess offer of $40,000 and defendant turned down such offer, or any sum less than $45,000, plaintiffs could not avail themselves of the following clause of the contract: "In the event that you find a buyer, ready and willing to enter into a deal for said price and terms, or such other terms and price as I may accept, * * * I hereby agree to pay you in cash for your services. * * *."

■ The evidence discloses that the contract between the parties was never terminated. In fact, plaintiffs insist, not only at the trial but here, that no such termination has ever taken place. Therefore the following clause of the contract lends no support to plaintiffs' case, i. e., "or that you place me in touch with a buyer to whom at any time within 90 days *after the termination of this contract* I may sell, transfer or convey said property, I hereby agree to pay you in cash for your services in connection with this contract a commission equal in amount to 5% of the sale price of the property." (Emphasis ours.)

Plaintiffs place sole reliance on the case of *McGuire v. Sinnett,* 158 Or 390, 76 P2d 472. That case and the instant case are distinguishable. The facts were somewhat dissimilar and the provisions of the contract were different. In that case the evidence discloses that the efforts of the real estate man to conclude the sale were frustrated by the action of the defendant and that the real estate agent did not abandon negotiations for the sale of the property. In the instant case there was no evidence of frustration and plaintiffs' own evidence shows that they ceased all efforts to sell the

property to the Hesses after the Hesses refused to increase the offer above $40,000.

"If a broker, after introducing a prospective customer to his employer to no purpose, abandons his employment entirely, or if, after procuring a person who proves to be unwilling to accept the terms of his principal, he merely ceases to make further endeavors to negotiate a deal with that particular individual and all negotiations in that direction are completely broken off and terminated, he will not be entitled to a commission if his employer subsequently renews negotiations with the same person, either directly or through the medium of another agent, and thus effects a sale without further effort on the part of the broker first employed. * * *" 8 Am Jur 1069, Brokers, § 144.

In the McGuire case we have the following contract provisions:

"* * * In the event of any sale, exchange or conveyance of said property during the life of this contract, or that you find a buyer ready and willing to enter into a deal or contract for said price and terms or on such other terms and price as may be agreed to by me, or place me in touch with a buyer to or through whom, within ninety days after the expiration hereof, I may sell, exchange or convey said property, * * * I hereby agree to pay you in cash for your services. * * *"

We there held that the contract provided that the agreement would expire on August 23, 1936, three months after the date of its execution, and then said:

"In the case before us, the broker is entitled to his commission in one of the three following instances: (1) if he found a buyer ready and willing to enter into a contract with the defendant on terms and price agreed to by the defendant; (2) if he placed the defendant in touch with a buyer to whom the defendant sold the property during the life of

the contract or within ninety days after the expiration thereof; or (3) if he was the procuring cause of the sale.''

The realtor in that case produced a purchaser on August 19, 1936, prior to the expiration date, and the sale was made to the purchaser on September 9, 1936, which, as said by the court, ''was within ninety days after the expiration date of plaintiff's contract.'' We also held that there was evidence to go to the jury that the realtor was the ''procuring cause of the sale.''

While *McGuire v. Sinnett* was properly decided, the construction there placed upon the clause, ''place me in touch with a buyer ·to or through whom, within ninety days after the expiration hereof, I may sell, exchange or convey said property'' was, we think, erroneous. This clause does not contain the words ''during the life of this contract'', and no rule of construction justifies the court in reading that language into the provision. Were there ambiguity in the language we should resolve the question against the broker who prepared the instrument, but there is no ambiguity. ''Within ninety days after the expiration hereof'' (i. e., the contract) is plain language requiring no construction and means exactly what it says. It does not refer to any period before the termination of the contract. It refers to a sale made between the time of expiration of the contract and a day ninety days thereafter. We have examined the briefs in *McGuire v. Sinnett* and find no discussion in them of the construction of this particular phrase, and the court's erroneous interpolation of the words ''during the life of this contract'' in setting forth the effect of the provision would appear to have been an inadvertence.

In *McGuire v. Sinnett* the court supported its conclusion that the evidence justified a finding that the

plaintiff had earned a commission by placing the owner of the property in touch with a buyer to whom the property was subsequently sold, by citation to the following cases: *Clarke v. Blackfoot Waterworks,* 39 Ida 304, 228 P 326; *Englemann v. Auderer,* 10 La App 136, 121 So 194; *Moore v. Holman Real Estate Co.,* 129 Ark 465, 196 SW 479. On the question of the meaning of the language "place me in touch with a buyer" they are properly cited, but they do not support the construction which we gave the phrase "within ninety days after the expiration hereof." They were all cases of exclusive real estate brokers' contracts with a fixed date of termination and containing similar provisions to those in the instant case and in *McGuire v. Sinnett* with regard to a sale made after expiration of the contract.

In an exclusive agency contract the reasons for these provisions seem to be fairly clear. The owner in such a contract is prevented from placing the property in the hands of another agent (8 Am Jur 1103, Brokers, § 192), and, even though he should make a sale through another agent during the life of the contract, the broker having an exclusive agency still would be entitled to his commission. But, to protect the broker on account of services rendered during the life of the contract which may be regarded as initiating a sale not consummated until after the contract has expired, a provision of the kind in question is inserted. That was exactly the state of the contract in *McGuire v. Sinnett* as originally prepared. It was a printed form of exclusive agency contract which the parties tailored to fit their agreement. The words "non exclusive" were written across its face in pen and ink, and some provisions suitable only for an exclusive agency were crossed out. But the phrase, "within ninety days after

the expiration hereof," did not mean anything different after the job of remodeling the form was done than it meant before. Nor can any different meaning be given that phrase in the contract now before us. The dictum to the contrary in *McGuire v. Sinnett* must, therefore, be considered overruled.

In the case at bar there was no calendar termination date, nor was there a provision that the owner agreed to pay the commission "in the event of any sale, exchange or conveyance of said property during the life of this contract," nor was there a procuring clause provision.

Not having found a buyer ready and willing to enter into a contract for the purchase price of $45,000, or such other price that the defendant was willing to accept, and not having placed defendant in touch with a buyer to whom at any time within 90 days after the termination of the contract the defendant sold the property, plaintiffs were not entitled to have the case go to the jury and the court should have granted defendant's motion for a directed verdict.

Reversed.