CECIL FLINDERS AND JOHN FLINDERS, CO-PARTNERS DO-
ING BUSINESS AS FLINDERS AGENCY, PLAINTIFFS AND RESPOND-
ENTS, v. WAYNE GILBERT, DEFENDANT AND APPELLANT.
No. 10409
Submitted September 7, 1962. Decided January 31, 1963.
378 P.2d 385

Cedor B. Aronow and David O. DeGrandpre, Shelby, (argued), for appellant.

Donald E. Ronish, Lewistown (argued), for respondents.

HONORABLE NAT ALLEN, District Judge (sitting in place of MR. JUSTICE DOYLE), delivered the Opinion of the Court.

This is an appeal from a judgment entered on a directed verdict for the plaintiff. The undisputed facts are as follows:

Defendant owned a farm near Hobson, Montana, which he

was buying from one Fitzwater. He was having difficulty in making his payments thereon and was unable to make the next payment due on July 1, 1960. To avoid losing his equity therein, defendant listed the farm for sale with ten real estate brokers, including the plaintiff. In each of these listing agreements the "exclusive clause" was stricken from the contract by agreement between the broker and defendant and by them initialed.

Plaintiffs received their non-exclusive listing on March 11, 1960. Two other brokers working for plaintiffs, to-wit, Powell and Ira Smith, introduced and showed the Henke family defendant's farm about April 1, 1960. At this time, although the Henkes had the desire to buy, they were totally unprepared to do so and could not until they sold some property they owned in Sheridan County. Plaintiffs at all times knew this as evidenced by the testimony of Cecil Flinders, who testified that Gilbert told him that Henke could not buy until they got some of their assets converted into cash and that he [Cecil] had nothing to do with Henke's stockyards or feed lot in Loma, although he [Cecil] tried to sell the paper but was unsuccessful.

Further, John Flinders testified that Ira Smith was to sell Henke's contract before they would have the money to buy; that the Flinders tried to sell it but were not successful; that he knew Gilbert would lose his place if not sold by July 1, 1960; and the Flinders were all attempting to sell Henke's paper for him.

One of the other real estate brokers who had a non-exclusive listing on defendant's farm was one Hunt from Great Falls, who was given a listing in May 1960, and who had been given a previous listing on the same place in 1959 and was familiar with its physical layout. Henkes, in attempting to dispose of their interest in the Sheridan County property, contacted the Hunt agency for assistance and Hunt informed Henkes he had a listing on defendant's place and Henkes

told him they were interested in buying it. Mr. Hunt was able to sell Henke's property in Sheridan County and placed them in a position to buy defendant's farm. In fact Hunt made a personal loan of $12,000 to Henke to save the deal and complete the sale of the contract on the Sheridan County property, and pay defendant so he would not be in default on July 1, 1960, on the Fitzwater contract.

Hunt was paid $8,000 by the defendant as a commission on the sale of defendant's farm to the Henke family. There was at no time any question of bad faith on the part of either the plaintiff or the defendant in this case and there is no question of fraud of any kind to avoid payment of any commissions whatsoever.

When plaintiff learned of the sale by defendant to Henkes, the plaintiffs immediately demanded a second fee of $8,000 from defendant and upon defendant's refusal, this suit was instituted by plaintiffs.

The pertinent parts of the listing agreement between plaintiff and defendant are as follows:

"In the event that you, or any other brokers cooperating with you, shall find a buyer *ready and willing* to enter into a deal for said price and terms, or such other terms and price as I may accept, or that during your employment you place me in contact with a buyer to or through whom at any time within 180 days after the termination of said employment I may sell or convey said property, I hereby agree to pay you in cash for your services * * *." Emphasis supplied.

The exclusive listing paragraph which was crossed out and initialed by both parties, reads as follows:

*"THIS LISTING IS AN EXCLUSIVE LISTING* and you hereby are granted the absolute, sole and exclusive right to sell or exchange the said described property. In the event of any sale, by me or any other person, exchange or conveyance of said property or any part thereof, during the term of your employment, or in case I withdraw the authority

hereby given prior to said expiration date, I agree to pay you the said commission just the same as if a sale had actually been consummated by you." The expiration date of the contract, as extended, was June 30, 1960.

Plaintiff first contends that he complied with the contract and found a buyer "ready and willing" in accordance with the terms of said contract, and cites Anderson v. Craig, 111 Mont. 182, 188, 108 P.2d 205, 206, in support of this. In the Anderson case the court was careful to point out that "beyond doubt the broker had complied with the terms of his listing agreement and has done all that could be done by such intermediary."

In the case at bar, plaintiff did nothing but first introduce the eventual buyer to the seller, and he not only did not induce the buyer to sign a contract as the broker did in the Anderson case, but freely admitted his inability to do so. We believe that in a non-exclusive contract such as the one cited herein, the broker that gets the commission must be the procuring cause of the sale, which we will discuss later in the opinion.

In the case of Withers v. Sohrweid, 198 Or. 449, 257 P.2d 267, the wording of the contract is exactly the same as the case at bar, although there was no expiration date on the contract as here. The only other difference between that case and the one at bar is that in the Withers case the seller had the land listed for $45,000 and the broker produced a buyer who offered $40,000 but he could not get either party to compromise. Thereafter, of course, another broker sold the property to the same buyer at the then agreed price of $42,500 and collected his fee. Said the court in that case, in holding against the plaintiff.

"The contract provided a purchase price of $45,000, and when plaintiffs submitted the Hess offer of $40,000 and defendant turned down such offer, or any sum less than $45,000, plaintiffs could not avail themselves of the following clause

of the contract: 'In the event that you find a buyer, ready and willing to enter into a deal for said price and terms, or such other terms, and price as I may accept, \* \* \* I hereby agree to pay you in cash for your services. \* \* \*' '' We think there is no substantial difference between producing a buyer who offers less than the seller asks and producing a buyer who makes no offer at all until he can sell some of his other property. In neither case did the broker find a "buyer ready and willing to enter into a deal or contract for said price and terms."

As to the second part of the contract, since the sale here was completed prior to the end of plaintiff's employment, which by the contract was June 30, 1960, the following clause: "\* \* \* or that during your employment you place me in contact with a buyer to or through whom at any time within 180 days *after the termination* of said employment I may sell or convey said property, I hereby agree to pay you in cash for your services" does not apply because plaintiff's employment had not terminated at the time defendant made this sale through the other broker. And further, the last-quoted part of the contract is consonant with the exclusive portion of the contract which was crossed out and it would appear to this court that in crossing out the exclusive portion, it makes the intention of the parties clear that if a commission was to be paid it must be earned by the broker being the procuring cause of the sale, and not simply introducing the defendant to the eventual buyer. This is especially true since in cases of doubt, the contract here should be construed most strongly against the maker.

The general rule in non-exclusive contracts is quoted in 12 C.J.S. Brokers § 92, as follows:

"Where several brokers are employed to negotiate or effect the same transaction, the broker who first succeeds and is the procuring cause of the transaction is entitled to the full commission, to the exclusion of the other brokers." To like

effect see Nation v. Hoiness, 33 Okl. 630, 126 P. 799, a case in which for failure to give the following instruction, the lower court was reversed:

"The court further instructs you that, when property has been listed for sale with a number of real estate agents, the one who succeeds in bringing the seller and purchaser together and induces them to enter into a contract is the one who has earned the commission; and this is true, regardless of the question as to who first introduced the seller and the purchaser."

Under the facts in this case, the above rule appears to be applicable, and we so hold. The mere introduction of the buyer to the seller is not sufficient to overrule the non-exclusive broker's provision and the fact that the "procuring cause" of the transaction was otherwise.

Plaintiff in his brief suggests that "Defendant in all fairness must seek reimbursement from Dave Hunt", but certainly the court's decision in Anderson v. Craig, supra, 111 Mont. 182, 108 P.2d 205, which he has cited to this court, would make it impossible for defendant to recover from Mr. Hunt and thus, the suggestion seems unwarranted.

The plaintiff not having found a buyer ready and willing to enter into a contract, and plaintiff not being the procuring cause of the sale eventually made, he cannot prevail. The judgment is reversed, and the court is instructed to enter a judgment not inconsistent with this opinion.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, JOHN C. HARRISON and ADAIR, concur.