W. C. WOOD, Plaintiff and Appellant, *v.* VERNON
STRODTBECK, Executor of the Estate of Harry
Strodtbeck, Deceased, and Hazel C. Strodtbeck, Defend-
ants and Respondents.

No. 10527
Submitted March 14, 1963. Decided June 5, 1963.
382 P.2d 170.

Cunningham & Morrison, James W. Cunningham (argued orally), Alex C. Morrison (argued orally), Thompson Falls, for appellant.

Eugene H. Mahoney, Thompson Falls (argued orally), for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Appeal from the district court of Sanders County from a judgment entered following the granting of defendants' motion for judgment notwithstanding the verdict.

In this matter the defendants, who were husband and wife, elderly and ill, owned a ranch. On October 4, 1960, they signed a written agreement with the plaintiff real estate broker listing the ranch for sale. The listing originally was exclusive but later changed at the request of the defendants to a general listing. Some months before the signing of the listing agreement the defendants had negotiated with George Fulton for a sale of the ranch but these negotiations had terminated. Following the listing plaintiff contacted Fulton and showed him the ranch. Plaintiff assisted Fulton in arranging a loan in order to enable him to make the purchase and on November 25, 1960, plaintiff notified the defendants' attorney that Fulton had the money and November 30th was fixed to close the sale and plaintiff also notified the defendants. This date was later postponed until December 2, 1960, at the request of the defendants.

On December 2, 1960, plaintiff and Fulton appeared at the attorney's office and were advised that the ranch had been sold through another broker the previous day.

Thereafter plaintiff commenced this action to recover a commission of 5%, alleging that he had secured a buyer who was ready, willing and able to buy the ranch upon the terms specified in the listing contract. Following a jury trial a verdict was rendered in favor of the plaintiff in the amount of $2,500, plus interest from December 1, 1960.

Defendants moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial. On March 29, 1962, the motion for judgment notwithstanding the verdict was granted ordering judgment for the defendants, each party to pay his own costs. Judgment was entered on September 14, 1962, and plaintiff appealed on September 17, 1962.

The sole specification of error is that the court erred in granting defendants' motion.

The court in its order reviewed the testimony and fully set forth its reasons for granting the motion as follows:

"A review of the testimony shows that the plaintiff secured a listing of the defendants' property under a contract whereby the plaintiff agreed to find a purchaser for the defendants' ranch property for a five per cent commission. The plaintiff produced one George Fulton as the prospective purchaser with whom the defendant had had dealings prior to the listing with the plaintiff. The plaintiff did considerable work with George Fulton, and finally George Fulton was able to borrow the money to make the down payment in the amount desired by the defendants. On November 26, 1960, the plaintiff advised the defendants of this fact, and advised the defendants to meet him in a lawyer's office in Kalispell. On November 29, 1960, the defendants were contacted by another real estate broker with whom they had listed the property, and he brought a buyer to the defendants who presented the money for the ranch, and thereupon the defendants, on December 1, 1960, entered into a contract with that buyer and sold the ranch and paid the broker his commission. The plaintiff now contends that he had found a buyer who was '* * * ready, willing and able

\* \* \* ' to purchase the ranch, and therefore demands a commission for his efforts.

"The legal questions involved are whether or not under the evidence as presented there are any facts proven that permit a judgment in favor of the plaintiff. On the question of 'ready and willing', the prospective buyer stated he was ready and willing, that he had been for about a year, and that on or about November 19, 1960, he had met with the defendants' lawyer and agreed upon the wording of the contract of sale, but at that time he did not have the funds for a down payment, and so a contract was not prepared and the parties did not reach any agreement as to any binding deal, but that the plaintiff and the prospective buyer did agree to the terms of a contract proposed by the lawyer who was the defendants' lawyer, but who testified he had no power to bind the defendants, and it is agreed that the defendants were not there at that time. On November 26, 1960, the plaintiff merely notified the defendants that Fulton had arranged for the down payment, and requested that the defendants meet with the plaintiff and Mr. Fulton in the lawyer's office in Kalispell on November 30, 1960.

"The question is whether or not this set of facts can justify a conclusion that the plaintiff had procured a purchaser who was '\* \* \* ready, willing and able \* \* \*' to buy. This Court feels that question must be answered in favor of the defendants. A review of the Montana Reports shows that more is required of a real estate broker than merely securing a purchaser who says he is ready and willing. The view this Court takes of the Montana law is that the broker must either bind the buyer by taking a deposit towards the purchase price and giving an escrow receipt, or having the prospective purchaser present a written offer to purchase or perhaps even signing a contract of sale, but the important thing is that the broker must present a buyer who is at least obligated to buy under the terms of some enforceable agreement. In this case the purchaser himself testified that even though he felt ready and willing to pur-

chase, he was not obligated legally to do so in that he could have refused to sign any contract of sale.

"The final legal question to be resolved is whether or not the prospective purchaser was able to buy. Anderson v. Craig, 111 Mont. 182, 188, 108 P.2d 205, defines 'able' as used in transactions such as this as 'financial ability.' So the question is whether or not the prospective purchaser had the financial ability to purchase the property.

"The testimony shows that the prospective purchaser was a young man, unmarried, and employed for wages on a cattle ranch, and that in addition to his job he was the owner of about 90 head of cattle that were being taken care of on the cattle ranch on which he was employed. The only testimony submitted was regarding the prospective purchasers efforts to obtain the money for the down payment. The defendants wanted to sell the ranch for $40,000, [sic $50,000] and wanted only twenty-nine per cent (29%) down because of the income tax problems and then wanted the balance in payments over ten years together with interest at five per cent (5%) per annum. The testimony also showed the defendants were willing to sell the cattle on the ranch, and the prospective purchaser then by executing a mortgage on those cattle, his own cattle, and also by having his prospective future in-laws sign a promissory note was able to borrow $30,000, the amount necessary to make the $14,500 down payment on the land, and also provide more than necessary to buy the defendants' cattle. The Production Credit Association agent who made the loan testified that he felt the security was ample, and that the borrower would be able to repay the loan, and also that his investigation showed the borrower was a young man with a very good reputation. In addition, the P.C.A. agent testified that the P.C.A. would require about $18,000 paid on the note the first year, or at least such an amount as would be obtained from the sale of the increase of cattle and any of the mortgaged stock. The plaintiff did not offer any testimony as to where the $5,500 annual payment

would come from, and it appeared from the testimony that this was a cattle ranch without any other income except from cattle. The plaintiff contends that the P.C.A. agent testified he would be lenient as far as the repayment of the loan, but this Court cannot see how such a remark can be construed as showing that the annual payments would be or could be met.

"Further, the testimony shows that the defendants had refused to accept George Fulton as a purchaser because they did not believe the young man had the ability to purchase the ranch. A direct denial had not been made to the plaintiff or to the prospective purchaser, but this was explained by testimony offered by the plaintiff himself, which testimony was to the effect that the defendants did not believe the prospective purchaser had the ability to buy the ranch, but unless such a buyer did come along, the defendants would, if necessary, sell to George Fulton so that they, the defendants, would not have to spend another winter on the ranch. If George Fulton wanted to purchase the ranch it seems that such an attitude on the part of the defendants would be more acceptable to plaintiff and George Fulton than an outright denial.

"Montana law seems well-settled that the real estate broker is not entitled to a commission unless the buyer found has the ability to purchase the ranch. This is true regardless of whether the broker's contract is only to find a buyer or the type of contract that required a completed sale before the broker is entitled to the commission. In this case the rule set forth in Anderson v. Craig, supra, [111 Mont.] at pages 187 and 188 [108 P.2d at pages 206-207] controls, and that rule briefly stated is:

" 'The seller has it within his power to reject an offer of purchase if he doubts the prospective purchaser's ability.' I believe such rejection must be based on a reasonable evaluation of the facts as presented by the testimony offered in court and proven to have been known to the defendants at the time of the rejection of the offer."

■ The proof here fully supports the order of the district court as to the facts.

■ This court has recently discussed the applicable law with respect to real estate brokers in a somewhat similar situation in Flinders v. Gilbert, 141 Mont. 442, 378 P.2d 385. In that case the broker contended he had found a buyer in accordance with the terms of his non-exclusive listing contract. However, the sale was later closed through another broker. We there stated:

"Plaintiff first contends that he complied with the contract and found a buyer 'ready and willing' in accordance with the terms of said contract, and cites Anderson v. Craig, 111 Mont. 182, 188, 108 P.2d 205, 206, in support of this. In the Anderson case the court was careful to point out that 'beyond doubt the broker had complied with the terms of his listing agreement and has done all that could be done by such intermediary.'

"In the case at bar, plaintiff did nothing but first introduce the eventual buyer to the seller, and he not only did not induce the buyer to sign the contract as the broker did in the Anderson case, but freely admitted his inability to do so. We believe that in a non-exclusive contract such as the one cited herein, the broker that gets the commission must be the procuring cause of the sale, which we will discuss later in the opinion."

We further stated:

"The general rule in non-exclusive contracts is quoted in 12 C.J.S. Brokers § 92, as follows:

" 'Where several brokers are employed to negotiate or effect the same transaction, the broker who first succeeds and is the procuring cause of the transaction is entitled to the full commission, to the exclusion of the other brokers.' To like effect see Nation v. Hoiness, 33 Okl. 630, 126 P. 799, a case in which for failure to give the following instruction, the lower court was reversed:

" 'The court further instructs you that when property has been listed for sale with a number of real estate agents, the one

who succeeds in bringing the seller and purchaser together and induces them to enter into the contract is the one who has earned the commission; and this is true, regardless of the question as to who first introduced the seller and the purchaser.'

"Under the facts in this case, the above rule appears to be applicable, and we so hold. The mere introduction of the buyer to the seller is not sufficient to overrule the non-exclusive broker's provision and the fact that the 'procuring cause' of the transaction was otherwise."

In our view the same reasoning applies to the situation here involved. Defendants doubted the financial ability of the proposed buyer to carry out any contract and when an opportunity arose to contract with a different buyer, where they had no such doubt, they took advantage of it. Under a non-exclusive listing contract defendants must be permitted to choose, when two buyers are under consideration, with which one they will deal. The listing contract in question here provided authority to the broker to execute a preliminary contract in accordance with its terms. Plaintiff did not see fit to do so. Too, Fulton could always have refused to go through with his proposed purchase, so testified, and in such a situation the district court's order was correct.

The judgment is affirmed.

MR. JUSTICES CASTLES and JOHN C. HARRISON, concur.

MR. JUSTICE DOYLE, deeming himself disqualified did not participate.