BARTSAS REALTY, INC., Appellant, *v.* HERSHEL LEVERTON and FIRST NATIONAL BANK OF NEVADA, Executor of the Estate of LOUIS A. WOITISHEK, Also Known as L. A. WOITISHEK, Deceased, Respondents.

No. 4916

January 11, 1966                409 P.2d 627

*Gregory & Gregory,* of Las Vegas, for Appellant.

*Jones, Wiener & Jones,* of Las Vegas, for Respondent Hershel Leverton.

*Samuel S. Lionel,* of Las Vegas, for Respondent First National Bank of Nevada.

**OPINION**

By the Court, BADT, J.:

Two real estate brokers here compete for a commission resulting from a sale of estate property. The sale

was confirmed by the court (NRS 148.060), which heard both brokers and then awarded the commission to respondent Hershel Leverton on three grounds: (1) appellant Bartsas Realty, Inc., "did not participate in the negotiations leading to the escrow agreement"; (2) Bartsas' contention that it was entitled the commission because it "brought the parties together" was negated by application of NRS 148.110—Contracts to find purchaser: limitation on commission; and (3) Bartsas "at no time" was "agent" for the seller. We find all three grounds inapplicable and not supported by the evidence.

The facts are brief. Executor First National Bank of Nevada announced generally to local real estate brokers a desire to sell Las Vegas property of decedent Louis A. Woitishek. The bank asked $990,000 for a 73-acre parcel with "terms to be worked out." One of the brokers, Mrs. Mary Bartsas, submitted a written offer for $990,000 from United States Development Company by Louis Davidson, president. The bank took this offer under advisement. Four days later it received another offer from Davidson for the same property, this time through broker Leverton. The bank told Leverton of Davidson's earlier offer by Mrs. Bartsas and Leverton replied, "Well, he has changed brokers and he has come to me now." The bank then notified Mrs. Bartsas of the second broker's involvement "for whatever action she thought she should take." Mrs. Bartsas communicated with Leverton without satisfaction; she found Davidson unavailable and, after three weeks, resorted to the mails, writing Davidson that she still hoped to effect a sale. Davidson never replied. Instead he continued negotiations with the bank through Leverton and eventually consummated a purchase, the escrow agreement providing the bank would pay Leverton a five percent commission. This is the sale the court confirmed.

1. A threshold point is whether Bartsas had standing to protest so much of the confirmation of sale as awarded the commission to Leverton. NRS 148.070 provides: "Any person interested in the estate may file written objections to the confirmation of the sale and

may be heard thereon * * *." Was Bartsas Realty, Inc., "interested in the estate"? The question might be disposed of by deciding Bartsas was not objecting to the confirmation of sale per se but only to an allocation of commission incident thereto, and therefor was not within the purview of NRS 148.070. Alternately, even applying NRS 148.070, it has been held by the California Supreme Court under an identical statute[1] that "the probate court has exclusive jurisdiction to adjust conflicting claims of two brokers." In re Hughes' Estate, 3 Cal.App.2d 551, 40 P.2d 295, 296, and cases cited therein.

2. Faced with competing brokers, a court must decide which was the "procuring" or "inducing" cause of the sale. Flinders v. Gilbert, 141 Mont. 442, 378 P.2d 385; 12 C.J.S., Brokers § 92. That broker is entitled to a commission, irrespective of who makes the actual sale or terms thereof. Close v. Redelius, 67 Nev. 158, 215 P.2d 659; Ramezzano v. Avansino, 44 Nev. 72, 189 P. 681; Dalke v. Sivyer, 56 Wash. 462, 105 P. 1031, 27 L.R.A., N.S., 195.[2]

It is impossible to measure in quantitative units the efforts necessary to constitute "procuring cause." Suffice that on the one hand it is "conduct that is more than merely trifling." Williams v. Walker, 95 N.H. 231, 61 A.2d 522. Thus in non-exclusive situations, merely introducing the eventual purchaser is not necessarily enough. Feeley v. Mullikin, 44 Wash.2d 680, 269 P.2d 828; Ingalls v. Streeter, 67 N.Y.S.2d 351. The first broker still may be shown to have abandoned efforts or been helplessly ineffective. Frink v. Gilbert, 53 Wash. 392, 101 P. 1088; Flinders v. Gilbert, supra.

On the other hand, a seller cannot in bad faith ignore or intervene so as to deprive a broker of commission.

---

[1] Cal.Prob. Code § 756.

[2] We do not pass on the possible personal liability of a seller who, irrespective of "procuring cause," individually contracts to pay a second broker.

The broker must be given an *opportunity* to consummate a sale with the ultimate purchaser where he initially introduced that purchaser and has not abandoned negotiations. This is so even where the purchaser has made a separate, more attractive offer either directly to the seller or through another broker. Feeley v. Mullikin, supra. The seller, in order to relieve himself of liability, must notify the procuring broker of the later offer and give him a reasonable time to protect his commission—or the seller must decline the sale. "Good faith and fair methods of trade require such a course of conduct." Grace Realty v. Peytavin Planting, 156 La. 93, 100 So. 62, 43 A.L.R. 1096.

Here, the lower court only found "Bartsas Realty, Inc., did not participate in the negotiations leading to the escrow agreement." This gives no indication whether Bartsas still might have been "procuring cause."

3.   As to Bartsas' claim that it "brought the parties together," the court rejected this on the basis of NRS 148.110, which provides an executor or administrator may free himself of *personal* liability for brokerage commissions by contracting in writing "with any bona fide agent to secure a purchaser for any real or personal property of the estate." Clearly this is immaterial as to determining which of competing brokers was "procuring cause." Further, no such pre-sale writing ever was executed here. Instead, the executor-seller included as part of its sale agreement a provision to pay commission to Leverton. This was no more than a personal promise by the executor; it could not defeat the already vested right of a broker who was "procuring cause." Such a right was primary and looked directly to the estate. It therefore was incumbent upon the court in approving payment from the estate to ascertain who was the "procuring cause" of the sale. This now must be done.

4.   Finally, the lower court held that "at no time" was Bartsas Realty, Inc., acting as agent for the seller. This is directly contra to the general rule that a real

estate broker *is* agent for the seller. We consistently have insisted upon a seller's legal obligation to his broker, absent express agreements otherwise, even amidst unethical conduct by a purchaser. Close v. Redelius, supra; Ramezzano v. Avansino, supra. Then, too, this agency question is immaterial as to "procuring cause."

For the reasons expressed, this case must be remanded with direction to the lower court to find specifically whether Bartsas Realty was the procuring cause of the sale. Absent such a finding, it is impossible to decide which of the competing brokers is entitled to recover a commission from the estate. At this time we express no view as to the rights of Leverton against the executor individually.

Reversed and remanded for a new trial in accordance with the views herein expressed.

THOMPSON, J., and ZENOFF, D. J., concur.

MCNAMEE, C. J., being incapacitated, the Governor assigned Honorable David Zenoff of the Eighth Judicial District Court to sit in his place.