No.   91-496

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

JAMES LANE, DEANNA LANE, d/b/a REALTY WEST,
LANE ASSOCIATES,

        Plaintiffs and Respondents,

   -vs-

H. W. SMITH, JR., and ELIZABETH A. SMITH
and EDWARD C. KIBLER and DIANNA M. KIBLER,

        Defendants and Appellants.


APPEAL FROM:   District Court of the Third Judicial District,
               In and for the County of Powell,
               The Honorable James E. Purcell, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

          R. J. "Jim" Sewell, Jr., Smith Law Firm, Helena,
          Montana

       For Respondent:

          Douglas Buxbaum, Poore, Roth & Robinson, Butte,
          Montana

FILED

NOV 16 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:   July 30, 1992

Decided:   November 16, 1992

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a judgment by the Third Judicial District Court, Powell County, granting plaintiffs' motion for partial summary judgment and denying defendants' motion for summary judgment. We affirm.

The issues on appeal are:

1. Was summary judgment appropriate where a realtor's commission was claimed?

2. Did the District Court err in granting summary judgment to plaintiffs?

3. Did the District Court err in awarding attorney's fees to plaintiffs?

H.W. Smith, Jr. and Elizabeth Smith (Smiths) owned the Avon Family Cafe in Avon, Montana. The Smiths wished to sell this property and listed it with brokers James Lane and Deanna Lane (Lanes) who are realtors with Realty West, Lane and Associates. The Listing Agreement was signed on June 20, 1986 and was to expire on June 20, 1987 with a 90-day grace period in which the terms were to be effective. Subsequently, the Lanes advertised the property and Edward C. and Diana M. Kibler (Kiblers) answered the ad. The Lanes showed the property to the Kiblers and although interested, the Kiblers could not afford a downpayment on the property.

The Kiblers were, however, interested in a Lease-Purchase Agreement which was agreed to within the time parameters of the Listing Agreement on September 5, 1986, after negotiations with the Smiths. The Lease-Purchase Agreement, drawn up by the Lanes'

2

attorney and containing a provision that the Lanes receive a commission if the option was exercised, was effective for two years ending October 1, 1988. A provision in the Lease-Purchase Agreement also provided for a partial commission payment of $1,000. Such partial payment was made. The agreement provided the terms under which the option could be exercised, and provided for 90 days' notice to the lessors when the lessees decided to exercise the option to buy.

The Smiths approached the Kiblers on July 3, 1988, before the Lease-Purchase Agreement expired, and wanted to know if the Kiblers intended to exercise their option. Subsequently, negotiations between the Smiths and Kiblers ensued and a title commitment on the property was issued on September 28, 1988, two days before the Lease-Purchase Agreement expired. The closing transaction took place on October 7, 1988, seven days after the expiration date specified in the agreement.

The Smiths refused to pay the remaining portion of the broker's fee. The Lanes initiated this action on October 28, 1988. The parties filed cross motions for summary judgment. The court held a hearing on May 17, 1991 and granted summary judgment to the Lanes on June 3, 1991. The Smiths appeal the summary judgment entered against them.

I.

1. Was summary judgment appropriate where a realtor's commission was claimed?

The Smiths argue on appeal that the District Court should not have considered summary judgment at all because summary judgment is

3

inappropriate where determination of a realtor's commission is at issue. The Smiths did not argue this to the District Court. We will not address this issue because it was not raised at the District Court level. See Weaver v. Law Firm of Graybill, Ostrem, Warner & Crotty (1990), 246 Mont. 175, 803 P.2d 1089.

## II.

Did the District Court err in granting summary judgment to plaintiffs?

Our standard of review on appeal from a grant of summary judgment is a two-pronged determination: we consider whether there are genuine issues of material fact and whether the movant is entitled to judgment as a matter of law. Payne Realty & Housing v. First Security Bank of Livingston (1991), 247 Mont. 374, 807 P.2d 177. To be successful, the movant for summary judgment must show clearly what the truth is. Berens v. Wilson (1990), 246 Mont. 269, 806 P.2d 14. Once this is done, it is incumbent on the non-moving party to come forward with substantial evidence demonstrating there are genuine issues of material fact which preclude summary judgment. Cecil v. Cardinal Drilling Co. (1990), 244 Mont. 405, 797 P.2d 232.

The District Court determined that the Lanes performed their obligation under the Listing Agreement by procuring a buyer to whom the property was sold or conveyed on terms acceptable to the Smiths. The court found no genuine issues of material fact. We agree.

The undisputed material facts contained in the contracts involved are: the Smiths are the sellers who executed an exclusive

4

one-year Listing Agreement with the Lanes as their brokers on June 20, 1986, containing the following pertinent provisions:

> In the event that [Lanes], or any other brokers cooperating with you, shall find a buyer ready and willing to enter into a deal for said price and terms, or such other terms and price as I may accept, or that during your employment you supply me the name of or place me in contact with a buyer to or through whom at any time within 90 days after termination of said employment I may sell or convey said property, I hereby agree to pay you in cash for your services a commission equal in amount to six percent of the above stated selling price.

The purchasers were the Kiblers who leased the property first and finally exercised an option to buy the property. The Lease-Purchase Agreement in which the option is contained was executed on September 5, 1986, within the time parameters of the Listing Agreement, and it contained a provision that the Lanes immediately receive a partial commission plus the remainder when the purchasers exercised their option.

The title commitment was issued on September 28, 1988, two days before the Lease-Purchase Agreement expired and the transaction was closed on October 7, 1988, seven days after the expiration date of the Lease-Purchase Agreement. The terms of the final sale varied somewhat from the Lease-Purchase Agreement. The Smiths refused to pay the remainder of the commission.

On appeal, the Smiths argue that genuine issues of material fact preclude summary judgment. We note that argument was not presented at the District Court level. Smiths argue that there is a question of fact as to the source from which the commission was to be paid. We conclude that the determination of that question is not required in this case. We have reviewed the record and

5

conclude there are no genuine issues of material fact concerning the contract issues which are presented by this case.

The District Court further determined that the Lanes were entitled to summary judgment as a matter of law. The court concluded that the Lanes had performed under their Listing Agreement because they procured a buyer for the property on terms which were acceptable to the seller. Further, the court concluded that the date of the sale must relate back to the time the original option to purchase was given, which, in this case, was within the time frame of the Listing Agreement. The court also concluded that the 90-day notice provision in the Lease-Purchase Agreement was inserted for lessors' benefit and since the lessor negotiated the sale, they had notice despite the lack of a formal 90-day notice. The court concluded finally that because the Smiths refused to pay the Lanes the remainder of their commission, the Smiths had breached the Listing Agreement.

Appellants contend that the Listing Agreement is an exclusive Listing Agreement and, therefore, 'procuring cause' is an inappropriate test to use in determining whether a commission is due. Appellants cite Flinders v. Gilbert (1963), 141 Mont. 442, 378 P.2d 385, for this proposition. The listing agreement in Flinders was a non-exclusive listing agreement where determination of the 'procuring cause' among many brokers was a necesasry determination. Respondents argue, and we agree, that Flinders does not hold that 'procuring cause' is only appropriate to non-exclusive listing agreements.

6

The procuring cause doctrine permits a broker to show that his or her part of the contract was performed and that the principal reaped a benefit from the efforts. D. Burke, Jr., The Law of Real Estate Brokers, § 3.4 (1992). The doctrine is not confined to consideration of non-exclusive listing agreements; it applies in all situations unless the parties agree otherwise in the listing contract. Id.

Here, the contract contains no such prohibitive provision. The District Court determined that because the brokers had performed their contractual agreement, they were the procuring cause of the sale. We conclude that the brokers produced the Kiblers who purchased the property during the required period under the Listing Agreement. We further conclude that the Lease-Purchase contained a provision granting the Lanes their commission and that the Kiblers bought the property.

Other jurisdictions have used the procuring cause doctrine in tandem with an exclusive listing agreement. Humphrey v. Knobel (Nev. 1962), 369 P.2d 872; Fox. v. Stewart (Ill.App. 1980), 414 N.E.2d 881. These cases, along with recognized treatises, indicate that one instance in which procuring cause is appropriate is in regard to the change of purchase price from a listing agreement to final sales terms. D. Burke, Jr., Law of Real Estate Brokers, § 3.4 (1992). The change in the final terms of the purchase does not automatically eliminate the broker's commission as appellants contend. All that is necessary for the broker to receive his commission is that the seller and buyer were brought together by

7

the broker:

> Where an agent contracts to furnish a purchaser for land at a stipulated price and such agent does furnish a purchaser whom the owner accepts, and in the negotiations of the contract the owner agrees upon and accepts a different price from that at which the agent was instructed to sell, still such agent would be entitled to his compensation . . .

Barrett v. Ballard (1980), 191 Mont. 39, 47, 622 P.2d 180, 185; citing Shober v. Blackford (1912), 46 Mont. 194, 127 P. 329. Both parties agree that the buyer and seller were brought together by the ad placed by the Lanes.

The terms of the initial contract clearly state that the Lanes are due a commission either on the terms listed in the agreement, or any other terms that the sellers accept. The sellers accepted the terms of the Lease-Purchase Agreement made within the time frame of the Listing Agreement. The sellers also accepted the final terms of the sales contract, agreed to within the time frame of the Lease-Purchase Agreement, which provided the Lanes a commission.

We conclude that the Lanes met their responsibilities under the contract and were the procuring cause of the sale and that the different final contract terms do not deprive the Lanes of their commission.

The District Court further concluded that the date of the sale must relate back to the signing of this Lease-Purchase Agreement. The Smiths argue that this is inappropriate--the transaction was closed seven days after the termination of the Lease-Purchase Agreement and the Lanes are not entitled to a commission. The

8

Lanes argue that other jurisdictions have determined that when an option is exercised, the date of sale relates back to the time the option was given.

The Lease-Purchase Agreement granted a commission to the Lanes if the Kiblers exercised their option to purchase. Basic fairness dictates that the date of sale relate back to the date the option was created in the Lease-Purchase Agreement. The payment of the partial commission to the Lanes demonstrates agreement between the parties that the Lanes were responsible for the sale to the Kiblers.

Other jurisdictions have reached the same results. In a case almost identical to the facts before us, the California Court of Appeals held that the date of final sale relates back to the date the option was given:

> It is well established that an option is not a sale of property, but rather a sale of a right to purchase. The option becomes a contract of sale binding on both parties only on acceptance of the option by the optionee. This does not mean, however, that a new contract is in fact made by and at the time of the acceptance. On the contrary, the contract has already been made as far as the optionor is concerned, but is merely subject to conditions which are removed by acceptance. [Emphasis added.]

Anthony v. Enzler (CA App. 1976), 132 Cal.Rptr. 553, 556. The court went on to hold that where options to buy property were granted and executed before the expiration date of the listing agreement, brokers were entitled to commission when the buyer exercised the option, even though the option was not exercised until after the expiration date of the listing agreement. Anthony, 132 Cal.Rptr. at 557.

9

We conclude that when negotiated within the time parameters of a listing agreement, the date on which a lease-purchase agreement is entered into is the effective date of sale for purposes of determining a broker's commission.

Appellants further argue that the Lanes are not due a commission because the Kiblers did not execute a notice of intent to buy 90 days before the exercise of the option as the contract requires. The court concluded that the purpose of the provision in the contract was to notice the lessors (Smiths), and the lack of notice does not affect the broker's commission.

We conclude that the District Court was correct. The 90-day notice provision of the Lease-Purchase Agreement was for the benefit of the Smiths. See Zaniewski v. Mancinone (Conn. 1981), 435 A.2d 50. Thus, the lack of notice does not affect the Lanes' commission because the Smiths knew about the sale as they alone negotiated the final terms of the agreement.

Finally, we conclude that the Lanes have performed their duties under the Listing Agreement by procuring a buyer on terms acceptable to the Smiths and are entitled to their commission. We further conclude that by refusing to pay the remainder of the commission owed to the Lanes, the Smiths have materially breached their contract and the Lanes are entitled to judgment as a matter of law.

Under these facts, we hold that the District Court did not err in granting summary judgment to the plaintiffs.

10

# III.

Did the District Court err in awarding attorney's fees to the plaintiffs?

The District Court concluded that because the Smiths had breached the Listing Agreement, and because the Lanes were obliged to enter into litigation to obtain their commission, the Lanes were entitled to reasonable attorney's fees according to the provision of the Listing Agreement.

Attorney's fees are properly awarded only when contractually or statutorily provided. Ehly v. Cady (1984), 212 Mont. 82, 687 P.2d 687. Here, the contract specifically states:

> In case of suit or action on this contract, it is agreed between us that the court, whether trial or appellate, may allow the prevailing party such sum as may be adjudged that party's reasonable attorney's fees.

This language is clear and unambiguous. Where the language is clear, the court need only enforce the contract. Keller v. Dooling (1991), 248 Mont. 535, 813 P.2d 437.

We hold that the District Court did not err in awarding attorney's fees to the plaintiffs.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

11

November 16, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

R.J. "Jim" Sewell, Jr.
Smith Law Firm
P.O. Box 604
Helena, MT 59624

Douglas Buxbaum
Poore, Roth & Robinson
1341 Harrison Ave.
Butte, MT 59701

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
      Deputy