No. 12226

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

-------------

E. C. STROMBERG,

Plaintiff and Appellant,

-vs-

SEATON RANCH COMPANY and DOROTHY M. SEATON,

Defendants and Appellants.

------------------------------------------------

MATT BROWN,

Plaintiff and Respondent,

-vs-

SEATON RANCH COMPANY, a corporation,

Defendant and Appellant.

-------------

Appeal from:  District Court of the Eighth Judicial District,
              Honorable Paul G. Hatfield, Judge presiding.

Counsel of Record:

    For Plaintiff and Appellant:

        Swanberg, Koby & Swanberg, Great Falls, Montana.
        Randall Swanberg argued, Great Falls, Montana.

    For Defendants and Appellants:

        Graybill, Graybill, Ostrem & Warner, Great Falls, Montana.
        Donald Ostrem argued, Great Falls, Montana.
        J. Vaughan Barron argued, Great Falls, Montana.

    For Plaintiff and Respondent:

        Harris, Jackson & Utick, Helena, Montana.
        L. V. Harris argued, Helena, Montana.

-------------

                              Submitted:  June 20, 1972
                              Decided: OCT 19 1972

Filed: OCT 19 1972

        _Thomas J. Kearney_
                    Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment entered by the district court of the eighth judicial district, county of Cascade, Hon. Paul G. Hatfield presiding, without a jury. Judgment was entered upon findings of fact and conclusions of law which found the plaintiff, Matt Brown, was the efficient procuring cause of the sale of the Seaton ranch to the Glacier Colony of Hutterites for $810,000 and entitled to a real estate commission in the amount of $40,500, together with attorney fees in the amount of $3,783.56, plus costs.

Plaintiff E. C. Stromberg, a real estate broker, filed an action against defendants Seaton Ranch Company and Dorothy Seaton to recover a real estate commission for the sale of the Seaton ranch. Later plaintiff Matt Brown, a real estate broker, filed an action against defendant Seaton Ranch Company, a corporation, for recovery of a real estate commission for the sale of the same ranch.

Defendants moved to have the two cases consolidated under Rule 42(a), M.R.Civ.P. Both plaintiffs resisted but the cases were consolidated by the court.

Seaton Ranch Company owned a large ranch near Fort Shaw in Cascade County. Ed Seaton, husband of defendant Dorothy Seaton, managed the ranch until his death in 1965. Thereafter Dorothy Seaton took over the management and became owner of all the stock in the corporation.

After her husband's death, Dorothy Seaton sold the machinery and part of the livestock and entered into approximately twenty nonexclusive listings with various real estate brokers for the sale of the ranch, including a listing with E.C. Stromberg dated May 17, 1966, and a listing to Matt Brown, dated December 9,1966.

Stromberg's listing contract contained no expiration date and was to remain open until either the contract was terminated or the ranch was sold. The Brown listing contract had an expiration date of June 15, 1967, although a blank space was left in the last paragraph of the Brown listing relating to the number of days after the expiration date during which Brown could recover a commission in the event of a sale.

Both Stromberg and Brown solicited the Glacier Colony. Soon after obtaining his listing on May 17, 1966, Stromberg contacted a group of prospective customers and imparted to them all of the pertinent information regarding the Seaton ranch. Among these prospective customers was Mr. John Entz of the Glacier Colony. Mr. Entz, secretary-treasurer of the Glacier Colony, had advised Stromberg prior to May 1966, that the Glacier Colony desired land in the Great Falls area. After receiving the real estate listing from Mrs. Seaton, Stromberg made two personal visits to the Glacier Colony, the first in May or June 1966, and the second sometime in the spring of 1967. Both times he gave information about the Seaton ranch to Mr. Entz and attempted to interest him in the ultimate purchase of the ranch. Stromberg also made several telephone calls to Entz regarding the possible sale of the property and wrote two letters to Entz dated January 5, 1967 and June 27, 1967, both of which discussed the Seaton ranch.

Mr. Entz visited Stromberg's office on several occasions, the last visit being on July 12, 1967. In July 1967, some members of the Glacier Colony went to Stromberg's office in Great Falls, expressed a desire to be shown the Seaton ranch, and asked for an appointment for that purpose. Stromberg never made the appointment nor showed them the ranch. The last contact by Stromberg with either Mrs. Seaton or the officers of the Glacier Colony was on July 12, 1967, when he wrote a letter to Mr. Entz

- 3 -

apologizing for his failure to make an appointment. Stromberg's testimony at trial was:

> "Like I told you before, you reach a saturation point on contacts and work with people. There is some point there where they indicated they were going to come back, I was certainly not going to go there the next day and lead them by the hand and say 'let's go'."

Matt Brown specialized in ranch properties and during the period from 1965 to December 1966, he obtained three nonexclusive listings to sell the Seaton ranch, one from Ed Seaton and two from Dorothy Seaton. He had already spent considerable time on this property when he received the listing in question here. Prior to the June 15, 1967, expiration of his listing, Brown on or about May 24, 1967, in response to a call from the Glacier Colony drove to the colony and spent two to two and one-half hours giving the leaders of the colony information on one other ranch and complete details on the Seaton ranch. They did not indicate they had ever seen the Seaton ranch but showed an interest in it. The only deterrent to their interest was an outstanding lease of the farm land to one Charles Jacobsen, but they advised Matt Brown that he could overcome that obstacle. Upon leaving the colony, Brown advised them to contact him when they were ready to look at the ranch.

Within a day or two after enlisting the interest of the Glacier Colony, on May 27, 1967, Brown went to see Dorothy Seaton at the ranch and advised her the Glacier Colony was interested in buying the ranch and ascertained that <u>she would not object to selling to Hutterites.</u> Brown then went to the home of Charles Jacobsen, the lessee of the Seaton ranch farm land in Fairfield, Montana, and attempted to find out what it would take to buy out the lessee's interest. He was unsuccessful in obtaining a figure.

Subsequently, the leaders of the Glacier Colony went to Jacobsen's home at Fairfield, their purpose being to deal directly

with him in attempting to buy his leasehold interest. They offered him $60,000, but he demanded $80,000. At that time they advised Jacobsen they were buying the Seaton ranch.

A few days after his visits to Mrs. Seaton and to Charles Jacobsen, Brown had another telephone call from the leaders of the Glacier Colony indicating they were in Great Falls and wanted to go out to look at the ranch. This was on June 21, 1967, five days after the expiration date in Brown's listing.

Brown met the colony leaders and drove them in his car to the Seaton ranch. He spent the entire afternoon showing the ranch, arriving at 2 p.m. and returning to his home between 7:30 to 8:00 p.m. He showed the leaders of the colony a large part of the ranch and they exhibited an interest in seeing the entire ranch property.

The showing of the ranch on June 21 was cut short when Brown's automobile was damaged when it slipped into a rut, but he was able to drive the leaders back to Great Falls. To complete the showing, arrangements were made for Brown to take the Hutterites to breakfast the next morning and then take them back to the ranch and complete the showing. However, early the next morning, one of the Hutterites called Brown at his home and stated that they had received a call and would have to return to the colony and so would not be able to return to the Seaton ranch.

The next day, June 22, 1967, Brown mailed a letter to John Entz expressing disappointment that he had been unable to show them the entire ranch, offering further information and urging them to make a cash offer.

A day or two later Brown called Mrs. Seaton and asked to meet her either at the ranch or at his office. She requested that he meet her at Weissman's store in Great Falls, as she did not want to meet him at the ranch. At this meeting Brown reported to her his activity in showing the ranch to the Glacier Colony

leaders and their failure to meet him for the breakfast and further showing of the ranch property.

A week or ten days later, after receiving no reply to his letter of June 22, Brown called the Glacier Colony to see if they did not want to come back to see the Seaton ranch again. He talked to one of the leaders and was told "forget it, now, Brown."

After Brown was told to "forget it", he took no further action, thinking the Hutterites would wait until the Jacobsen farm lease had expired and that they would come back to him. It was unknown to him that the colony had voted to buy the ranch and had continued to visit the Seaton ranch throughout the balance of the summer of 1967, and during the winter of 1968. Neither did he know that the leaders of the Glacier Colony during the same period of time were negotiating directly with Mrs. Seaton, without going through him, doing so one time in company with another broker, Leonard Doran, and on several occasions by themselves. It was also unknown to Brown that Mrs. Seaton was contacting Charles Jacobsen during the fall of 1967 and winter of 1968, to determine whether or not he would let his lease prevent a sale of the ranch to the Glacier Colony.

The colony leaders were negotiating directly with Dorothy Seaton or her fiscal agent, a brother-in-law. Neither Brown nor Stromberg were aware of these dealings. During this time she sold a parcel of five to six thousand acres for around $40,000 and a parcel of 160 acres for $6,000; and in March 1968 sold the balance of the ranch to the Glacier Hutterites for $810,000, subject to the leasehold interest of Charles Jacobsen.

Leonard Doran, a real estate broker, had a listing in 1966 but when he went to the ranch with the colony members he had no valid listing. The colony leaders indicated that he was their broker but admitted they worked around him in the end.

After trial the district court entered the following findings of fact and conclusions of law:

## "FINDINGS OF FACT

"1. Defendants' motions for dismissal should be denied, and plaintiff, Matt Brown's offered evidence of excerpts from the deposition of Dorothy M. Seaton should be received.

"2. Plaintiff, Matt Brown, is and has been a real estate broker, licensed by the State of Montana since 1958, and engaged in the sale of ranch properties at Great Falls, Montana, and in the surrounding area.

"3. Defendant, Seaton Ranch Company, is a Montana corporation which owned a large ranch, known as the Seaton Ranch, in Cascade County, Montana, near Fort Shaw, until March 27, 1968, and defendant, Dorothy M. Seaton, is and has been the owner of the entire beneficial interest in said corporation and in complete control of the corporation.

"4. On December 9, 1967, defendants employed plaintiff, Matt Brown, as a real estate broker to sell the Seaton ranch, under a written contract of employment. The written contract provided that Matt Brown had a 'non-exclusive' right to sell the ranch until June 15, 1967, and listed a price of $900,000. The contract, also provided:

'If you or any other agents or brokers cooperating with you find a buyer ready and willing to enter into a deal for said price and terms or any such other price and terms as I may accept, or any time during your employment you place me in contact with a buyer to or through whom at any time within _____ days after terminating said employment, I may sell or convey said property, I agree to pay you in cash for your services a commission equal in amount to __5__ % of the selling price.'

The contract further provided:

'I agree to pay any sum a Court may adjudge as reasonable attorneys' fees in case suit or action is filed on this contract.'

The space permitting the insertion of the period of time during which the broker would be entitled to a commission for a sale consummated to a party with whom the broker placed the seller 'in contact' was not specifically discussed by the parties at the time they entered into the contract, but the conduct of the respective parties and the course of dealing between them, viewed in the light of the customs and usages in the sale of large ranches, clearly establishes that it was the intention of the parties to allow a reasonable time after the expiration date during which the broker would be entitled to the commission.

"5. Plaintiff, Matt Brown, had had two earlier non-exclusive listings on the Seaton ranch, before he obtained the listing on December 9, 1966, under which he had obtained a great deal of information and done a great deal of work, which had given him an extensive familiarity with the details of the ranch and permitted him to represent it and discuss it with prospective buyers.

"6.On or about May 26, 1967, before the expiration date of his listing, Matt Brown received a telephone call from the Glacier Colony of Hutterites, near Cut Bank, Montana, inquiring as to the availability of large ranches. On May 26, 1967, he went from Great Falls to Cut Bank and attempted to reach the colony, but took a wrong road and was compelled to stay overnite in the Glacier Hotel in Cut Bank. The next morning, on May 27, 1967, he went to the headquarters of the colony and met with the leaders of the colony, and gave them information on one other ranch and detailed information on the Seaton ranch. The leaders of the colony expressed a keen interest in the Seaton ranch, having only one objection -- that there was a lease on the farm land on the ranch to a Charles Jacobsen which would not terminate until the end of the 1970 crop season -- and they urged Matt Brown to take action to attempt to dispose of the outstanding leasehold interest, assuring him they would buy the ranch if he would do so.

"7. Within a day or two after he had interested the Glacier Colony in the Seaton ranch, and before the expiration date of his listing on June 15, 1967, Matt Brown went to the Seaton ranch and informed Dorothy M. Seaton of the interest of the Glacier Colony in the purchase of the ranch, securing her assurance that she would not object to selling to Hutterites. He also made two visits to Charles Jacobsen in attempts to make a deal to buy the outstanding leasehold interest in the farm land held by him.

"8. On June 21, 1967, Matt Brown met the leaders of the Glacier Colony in Great Falls, and drove them out to the Seaton ranch, where he spent a substantial amount of time going over the ranch with them and showing it to them. After experiencing difficulty in getting his car stuck, he took them back to Great Falls, and made arrangements to take them to breakfast, the next morning, and then take them back out to finish looking at the ranch.

"9. The next morning, June 22, 1967, Matt Brown received a telephone call from one of the leaders of the Glacier Colony advising that personal matters required that they return to the colony, near Cut Bank, and that they would not be able to go back to finish looking at the Seaton ranch. Later, the same day, Matt Brown wrote a letter to John Entz, Secretary-Treasurer of the Glacier Colony, expressing his disappointment that the Hutterites had had to return to the colony before seeing the balance of the Seaton ranch, and assuring him of his interest in negotiating the terms of a sale.

"10. Soon after June 22, 1967, Matt Brown called the Glacier Colony on the phone to ask that he be allowed to continue negotiations for the sale of the Seaton ranch, and he was advised that they were not interested -- 'to forget it.'

"11. Following their visit to the Seaton ranch with Matt Brown on June 21, 1967, the leaders of the Glacier Colony repeatedly and continuously returned to the Seaton ranch, examining it more minutely, and these inspections continued at least as late as November, 1967, when they were able to inspect the stand of the winter wheat crop. On at least two of these occasions they met with Mrs. Seaton at the ranch to discuss the purchase of the ranch.

"12. It appears that the Glacier Colony received some information concerning the Seaton ranch from E.C. Stromberg prior to the activity of Matt Brown with respect to the Glacier Colony, but E. C. Stromberg never aroused sufficient interest in the Glacier Colony to make them request a showing, and there is no substantial evidence to indicate that the Glacier Colony ever had any genuine interest in buying the Seaton ranch as a result of anything done by E. C. Stromberg.

"13. It appears that some members of the Glacier Colony visited the Seaton ranch during the summer of 1967, in company with one Leonard Doran, a real estate broker who had previously had a non-exclusive listing which had expired in 1966, with no provision that it could have any effect whatsoever beyond its expiration date unless earnest money had been deposited. There is no credible evidence establishing specific dates for any visits of the Glacier Colony Hutterites to the Seaton ranch prior to their visit with Matt Brown on June 21, 1967, and there is no credible evidence that the leaders of the Glacier Colony became genuinely interested in the purchase of the Seaton ranch as the result of any activities by Leonard Doran, or otherwise, prior to the time Matt Brown visited the Glacier Colony on May 27, 1967.

"14. Dorothy M. Seaton had, by her own estimate, given twenty non-exclusive listings for the sale of the Seaton ranch between the death of her husband in 1965 and the end of 1966, and was willing to sell the ranch at all times herein concerned. The listing given to Matt Brown on December 9, 1966, was the last listing given.

"15. During the fall of 1967, Dorothy M. Seaton sold certain parcels of the ranch which had been included in Matt Brown's listing, separately from the rest of the ranch -- one of 5,000 acres bringing at least $25,000 or $30,000, and one of 160 acres bringing at least $6,000.

"16. During the winter of 1967-1968, Dorothy M. Seaton was absent from the State of Montana for a considerable period of time, being in California, and, during this time, the leaders of the Glacier Colony of Hutterites negotiated for the purchase of the Seaton ranch with her brother-in-law, Robert W. Gronberg, a

banker in Choteau, Montana, who had a qualifying share of stock in the Seaton Ranch Company and was Vice President, and who was also Mrs. Seaton's adviser in financial matters.

"17.   After several meetings in the bank of Robert W. Gronberg, in Choteau, a sale of the Seaton Ranch from the Seaton Ranch Company to the Glacier Colony was consummated on March 27, 1968, for a price of $810,000, subject to the outstanding lease of Charles Jacobsen, not including the parts of the ranch which had been previously disposed of, and without the payment of any real estate commission.

"18.   The conduct of Dorothy M. Seaton, subsequent to being informed of the interest of the Glacier Colony in buying the Seaton ranch, in late May or early June, 1967, exhibited an intention and design to exclude Matt Brown from further negotiations for the sale of the Seaton ranch to the Glacier Colony for the purpose of avoiding the payment of a real estate commission, which intention and design were pursued until the sale was consummated.

"19.   The activities of Matt Brown, and particularly his activities from May 26, 1967, through June 22, 1967, were the efficient procuring cause of the sale of the Seaton Ranch to the Glacier Colony.

"20.   Under all of the circumstances, and in view of the continuity of the interest of the eventual purchaser and the continuity of the negotiations, the period of time from June 15, 1967 to March 27, 1968, is a reasonable time to be allowed during which Matt Brown would be entitled to a real estate commission in connection with a sale to a buyer with whom he had put the seller in contact.

"21.   Plaintiff, Matt Brown, has been compelled to employ attorneys to prosecute this action, and his attorneys were required to expend at least 144.5 hours in the prosecution of the case, not including two days pre-trial preparation, two days in trial, and time subsequent, and said services are of a reasonable value of $3,783.56.

## "CONCLUSIONS OF LAW

"1.   The efforts of plaintiff Matt Brown were the efficient procuring cause of the sale of the Seaton ranch from the Seaton Ranch Company to the Glacier Colony, at a price of $810,000, which price was within the contemplation of the listing contract between the Seaton Ranch Company and Matt Brown, and Matt Brown is entitled to a real estate commission in the sum of $40,500.00

"2.   Plaintiff, Matt Brown, is entitled to a further sum in the amount of $3,783.56, as and for his attorney's fees herein, together with his costs incurred."

Plaintiff-appellant E. C. Stromberg raises these issues on appeal:

1. The court erred in not finding that E. C. Stromberg had the only valid and legal real estate listing to sell the Seaton ranch during March 1968.

2. The district court erred in finding that Matt Brown rather than E. C. Stromberg was the efficient and procuring cause of the sale of the Seaton ranch to the Glacier Hutterite Colony.

3. The court erred in not finding that Mrs. Dorothy Seaton fraudulently and/or in bad faith intervened and prevented E. C. Stromberg from concluding the aforementioned sale.

Defendant-appellants Seaton Ranch Company and Dorothy Seaton raise these issues on appeal:

1. Whether the evidence on record supports the findings of the district court, more particularly the following:

(a) That, prior to the expiration of his listing contract, plaintiff-respondent Matt Brown informed Dorothy Seaton of an interest of the Glacier Colony of the Hutterite Order in purchasing the property of the Seaton Ranch Company.

(b) That Mrs. Seaton had design and intention to exclude Brown from negotiations regarding the sale of the ranch for the purpose of avoiding the payment of realtor's commission to Brown.

2. Whether the district court erred in finding that Brown was the efficient procuring cause of the sale of the Seaton ranch to the Glacier Colony.

3. Whether during the term of Brown's listing contract he found a buyer ready, willing and able to enter into a "deal" for the purchase of the Seaton ranch property and if not, whether his failure to do so bars him from recovery of a real estate commission.

4. Whether the district court erred in entering judgment against the individual defendant, Dorothy M. Seaton.

As is indicated in the summary of the facts, there was an unusual amount of evidence presented to the trial judge which resulted in numerous conflicts in the evidence. He was the one who had the only opportunity to see and hear all witnesses. Each party makes a strong argument that these facts and circumstances favor his position. Yet, as has been stated by this Court too many times to require citation, it is not this Court's province to review the record of the trial court to determine whether or not we agree with the conclusions reached, if supported by the evidence. We must indulge the presumption that the judgment of the district court is correct and will not be disturbed unless there is a clear preponderance of evidence against it when viewed in the light most favorable to the prevailing party, in this case plaintiff-respondent Matt Brown. The burden rests with the appellants to make this showing. We do not find that they have carried the burden.

The principal argument of Seaton Ranch Company and Dorothy Seaton is grounded on the assertion that the chain of events which occurred after the primary term of Matt Brown's contract expired on June 15, 1967, must be viewed as irrelevant and that the evidence must show Brown produced a ready, willing, and able buyer before that date. This position is urged under the holding in Flinders v. Gilbert, 141 Mont. 442, 378 P.2d 385, which they contend has the effect of rendering all nonexclusive listings subject to the standard of requiring the broker to be the procuring cause by producing a buyer ready, willing, and able before a commission will be required to be paid regardless of the last paragraph of the listing contract which governs the rights of the parties after the term of the primary contract expires.

We do not quarrel with _Flinders_ or its application to the fact situation in that case. We do not agree with the broad application given to _Flinders_ by appellants here. Briefly, that case involves a dispute between two brokers whose listing contracts <u>had not expired</u> and the Court held that the paragraph similar to the one in dispute here <u>did not apply</u> in that case because <u>plaintiff's employment had not terminated at the time the sale</u> was made through broker Hunt. And, by way of dictum, the court observed that the paragraph which governed the rights of the parties after expiration of the listing, even though it had no application, was consonant with a <u>paragraph that was</u> stricken, which paragraph contained exclusive contract provisions. This was found to bear on the intent of the parties in that case.

It would be difficult to apply that standard to all nonexclusive listing contracts, such as in the present case, when it appears no substantial language was stricken. It is possible to enter into a nonexclusive listing contract with this type of protection afforded for a time after the expiration of the agreement. See Annotation, 27 ALR2d 1408. Each case would have to be examined on its own circumstances. But, more important here is the declaration by the Court in _Flinders_ that there was no bad faith or fraud by either plaintiff or defendant, and the <u>commission was paid.</u> If the finding on fraud or bad faith had been to the contrary, then certainly the judgment would not have been affirmed in Hunt's favor.

Here, the trial court in its finding of fact No. 18 found <u>bad faith</u> in the interruption and exclusion of Matt Brown from productive negotiations by the seller, which continued until the sale was consummated. There is substantial direct and circumstantial evidence to support the trial court's finding. This finding is strengthened by strong evidence of bad faith on

the part of the buyers working in concert with the seller. We cannot overlook the fact that the buyer's cooperation made it less difficult to achieve the exclusion, and particularly when the financial gain from this type of activity enured to the benefit of both seller and buyer.

There is credible evidence to support the trial court's finding as between plaintiff Brown and plaintiff Stromberg. Both were equally entitled to sell the property and both were proceeding in a good faith effort to do so. Even though Stromberg's listing had not expired, this is not controlling as between the two plaintiffs under the circumstances of this case. As the evidence demonstrates, Stromberg worked hard with the buyers, as did Brown, over a period of time. However, Stromberg's relationship with the Glacier Colony became impaired and he relaxed his effort and failed to carry through and show the property to the Colony. By his own testimony he was not prepared to "take them by the hand"; he felt a saturation point had been reached. About this time Brown did show the property and kept after all parties trying to negotiate a sale. The law is clear that if Brown's primary listing contract expired during active negotiations he could not be excluded. This is particularly true in this case where the court found Brown did not relax his efforts but was prevented by the actions of the defendant from proceeding during actual negotiations that did result in a sale. See: Bartsas Realty, Inc. v. Leverton, 82 Nev.6, 409 P.2d 627; Flinders v. Gilbert, 141 Mont. 442, 378 P.2d 385; 43 A.L.R. 1096; 46 ALR2d 854; Shober v. Blackford, 46 Mont. 194, 127 P. 329.

The reasonableness of the time involved in this case has also been questioned by defendants. Under usual circumstances time allowed to protect the broker after expiration of the principal listing under a protective paragraph, if no time period

is named, is held to be a reasonable time. Reasonable time in transactions of this type is determined by the nature and character of the service to be rendered, magnitude of the undertaking, the intention of the parties, and all the facts and circumstances of the case. 12 C.J.S. Brokers § 88, p. 203. Under all the circumstances of this case it would appear that this test has been met.

Concerning defendants' issue No. 4 relating to the personal liability of Dorothy Seaton for payment of the real estate commission, it is abundantly clear from the evidence that Dorothy Seaton is the alter ego of Seaton Ranch Company by reason of her ownership of the entire beneficial interest therein. Under such circumstances equity demands that the Court pierce the corporate veil. Accordingly defendant Dorothy Seaton is personally liable for payment of the commission as determined by the trial court.

The judgment of the trial court is affirmed.

----------------------------------------
Associate Justice

We Concur:

----------------------------------------
Chief Justice

----------------------------------------

----------------------------------------

----------------------------------------
Associate Justices.