No. 13697

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

KENNETH LYNN YECNY and
JANE ELLEN YECNY, husband and wife,

Plaintiffs and Respondents,

-vs-

LOUIS DAY, JR. and Dorothy L. day,
husband and wife, et al.,

Defendants and Appellants.

---

Appeal from:  District Court of the Fifth Judicial District,
Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

For Appellants:

Gilbert & Gilbert, Dillon, Montana
Max A. Hansen argued, Dillon, Montana

For Respondents:

Schulz, Davis & Warren, Dillon, Montana
John Warren argued, Dillon, Montana

---

Submitted:  September 19, 1977

Decided: NOV 1 5 1977

Filed: NOV 1 5 1977

_Thomas J. Kearney_
Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

This is an appeal by defendants, Louis Day, Jr. and Dorothy L. Day, husband and wife, from the District Court's order, Madison County, granting plaintiffs' motion for summary judgment on Count I of the amended complaint. Count II of the amended complaint is not before this Court.

Plaintiffs are purchasing certain real property located in Madison County, Montana, hereinafter referred to the "Yecny property". Due to the location of the property, private land must be crossed to gain access. Plaintiffs have not asked for, nor been given any grant of right-of-way to cross the existing "private lane" to reach their land. The usage of this private lane precipitated the law suit. Plaintiffs filed their complaint alleging that defendants had denied them use of a right-of-way or easement by prescription across the portion of the lane which burdens defendants' property.

The complaint was filed December 17, 1974. Following legal proceedings, plaintiffs moved for summary judgment with respect to the first count of their amended complaint. A hearing was held on the motion. The evidence presented to the District Court consisted of the depositions of the Durhams, plaintiffs' predecessor in interest, of defendants, and of Fred Winslow, a homesteader familiar with the property in question since 1919; the pleadings; the exhibits; the testimony of the parties; and the oral arguments of counsel. Based upon this evidence, the District court granted plaintiffs' motion for summary judgment. Defendants appeal from this order.

The issues raised before this Court are:

1. Did the District Court err in granting plaintiffs' motion for summary judgment on the first count of plaintiffs' amended complaint, and declaring plaintiffs to be the owners of

an easement or right-of-way across defendants' property?

2. Did the District Court err in making and entering certain other written findings of fact and conclusions of law, and a judgment, which failed to limit future use to ordinary residential use by one family only, or in some way to limit the burden of the easement?

A review of the facts finds that in 1941 Durhams purchased a ranch in Madison County containing the Yecny property. At that time, the "private lane" existed, and was fenced on both sides. According to Durhams, they used the lane without permission, whenever convenient, and according to their needs. During the Durhams' 30 years of ownership of the Yecny property Mr. Durham did repair work on the lane. Around 1946 Mr. Durham rebuilt a bridge across the lane. In 1972 Mr. Durham caused a caterpillar to improve a portion of the lane. During this period no objection was made of Durhams' use and repair work.

In 1963 defendants purchased what is known as the Day property. The "private lane" was in existence and fenced on both sides. A portion of that lane burdened the Day property.

In 1974, Durhams sold to plaintiffs the Yecny property. Before plaintiffs purchased the property, defendants had not objected to Durhams' use of the portion of the lane burdening their property. Durhams had never sought, nor received, permission for this use. Shortly after plaintiffs took possession, defendants initiated efforts to prevent plaintiffs' use of the lane.

Issue 1.

The District Court ruled that the pretrial record disclosed the absence of any genuine issue of material fact and that the moving party was entitled to judgment as a matter of law. "'We must indulge the presumption that the judgment of the

- 3 -

district court is correct and will not be disturbed unless there is a clear preponderance of evidence against it when viewed in the light most favorable to the prevailing party.'" Magelssen v. Mouat, 167 Mont. 374, 382, 538 P.2d 1015 (1975), quoting from Stromberg and Brown v. Seaton Ranch Co., 160 Mont. 293, 306, 502 P.2d 41.

The initial inquiry of this Court concerns the defendants' burden, as the party resisting summary judgment. Where the record discloses no genuine issue of material fact the burden shifts from the moving party. Under that circumstance, the party resisting the motion must come forward with substantial evidence raising the issue. Harland v. Anderson, 169 Mont. 447, 548 P.2d 613, 615, 33 St.Rep. 363 (1976).

> " * * * Once the burden has shifted, the party opposing the motion is held to a standard of proof about equal to that initially imposed upon the moving party:
>
> "' * * * the party opposing motion must present facts in proper form--conclusions of law will not suffice; and the opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, nor merely suspicious.'" Harland, supra.

We hold defendants did not meet their burden of proof. Defendants' purported issues of genuine material fact are bold assertions and fail to meet the standards set forth in Harland.

Defendants first assert the evidence shows the use of the lane to be by permission. This is a bold assertion. Defendants did not present evidence demonstrating Durhams' use to be a result of neighborly accomodation and thus not hostile nor adverse. Contrarily, plaintiffs presented the testimony of Mr. Durham, stating he had used the lane without permission since 1941 despite knowing the lane was not county property. Mr. Durham claimed he traveled the lane whenever convenient and maintained the lane by repairing the bridge, fixing the culvert, and removing

- 4 -

rocks. There was no evidence that Days or their predecessors ever acted to interrupt Durhams' use of the lane. Additionally, testimony was elicited from the defendants showing the non-permissive use of the lane. In 1971, Mr. Durham drove a caterpillar on the lane and began repairing the lane without asking permission. Defendant Louis Day admitted in his deposition the following:

> "Q. Now, when Mr. Durham came in * * * I believe this was about in 1971? A. '71, yes.
>
> "Q. * * * and started repairing the road, did he discuss the repairs with you? A. He didn't do anything. I came home from work one day, and he had this big bulldozer right in the middle of the road.
>
> "Q. So he didn't ask your permission about * * * A. No.
>
> "Q. * * * doing anything to the road? When he started repairing the road, did you then go to him and discuss the repairing with him? A. No, I did not; I did not."

Defendants' assertion is unconvincing that mere use of the lane failed to prove adversity. According to Scott v. Weinheimer, 140 Mont. 554, 561, 374 P.2d 91 (1962), where the plaintiffs and their predecessor in interest used such road for 35 years, this use unexplained raises a presumption that it was adverse. The lane in this case was used for 33 years without question. The presumption that Durhams use was adverse was not rebutted.

Defendants next assert that the poor condition of the road precluded use and thus prevented establishing the prescriptive period. This claim lacks merit. The combined testimonies of Mr. Durham, Mr. Day and Mr. Winslow establish that the lane was used. There was no contradicting evidence showing that the lane could not be used by Durhams.

To establish the existence of an easement by prescription, the plaintiffs must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the

- 5 -

full statutory period. Weinheimer, supra at 560. "Continuous and uninterrupted" has been explained as follows:

> "By 'continuous and uninterrupted use' is meant that the use was not interrupted by the act of the owner of the land, and that the right was not abandoned by the one claiming it. * * *" Kostbade v. Metier, 150 Mont. 139, 143, 432 P.2d 382 (1967). See also Wilson v. Chestnut, 164 Mont. 484, 525 P.2d 24 (1974).

Also:

> "Continuous use does not imply constant use. All that is necessary to obtain title by prescription to a ditch conveying water is that the ditch be used whenever water was needed." Selle v. Storey, 133 Mont. 1, 6, 319 P.2d 218 (1957), citing Hays v. DeAtley, 65 Mont. 558, 212 P. 296 (1923).

While Mr. Durham's testimony concerning the exact daily times of use between 1941 and time of selling the land to plaintiffs was hazy, his testimony concerning use since 1941 was uncontradicted.

Defendants' third assertion attempts to raise an issue of abandonment. This issue was not raised before the District Court and resultantly, precludes consideration by this Court. Johnson v. Johnson, ____Mont.____, 560 P.2d 1331, 34 St.Rep. 101, 103 (1977).

Issue 2.

The District Court did not limit the use of the lane by the Yecnys to ordinary residential use by one family. In order for this Court to disturb the judgment of the District Court, the defendants had the burden to show by a clear preponderance of evidence that the judgment was incorrect. Stromberg & Brown v. Seaton Ranch, supra.

This was not done. The uncontested evidence is replete with proof of plaintiffs' predecessors' nonresidential use of the lane. Mr. Durham testified to using the lane to transport livestock, to haul timber, hay and grain, to check irrigation headgates, and to use the lane in any manner for which a rancher

might use a road.  Accordingly, this Court will not disturb the judgment of the district court.

For the foregoing reasons, the judgment of the District Court is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices