David E. DAHL, Appellant,

v.

John A. GRIFFIN, Jr., Appellee.

No. 5800.

Supreme Court of Alaska.

Oct. 8, 1982.

Thomas E. Fenton, Fairbanks, for appellant.

Dick L. Madson, Cowper & Madson, Fairbanks, for appellee.

Before BURKE, C.J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

In December 1979, John A. Griffin, Jr. and David E. Dahl entered into a "Listing Agreement" which provided that Dahl was to act as real estate agent for the sale of a commercial building owned by Griffin. The listing agreement, which was to run from December 20, 1979 to February 1, 1980, stated in part:

> I hereby grant said Agent the exclusive right to sell said property within· said time . . . .

> In the event the said Agent shall find a purchaser or purchasers ready, willing and able to purchase said property for said price and terms, I hereby agree to pay said Agent, as Commission . . . $25,000.

Griffin subsequently sold the building himself and refused to pay Dahl a commission on the sale.

Dahl filed suit in the superior court seeking to recover the $25,000 commission provided for in the agreement. At his deposition Griffin testified that it was his understanding that under an exclusive listing "anyone" could sell the property, "and the one with the exclusive listing, . . . they're still entitled to make a commission off it."[1] On cross motions for summary judgment the superior court held that Griffin was not liable to pay Dahl a commission because the listing agreement did not expressly provide that the broker (Dahl) would be entitled to a commission even if the owner (Griffin) sold the property himself during the term of the agreement.[2]

On appeal, Dahl asserts that Griffin's deposition testimony indicates Griffin understood that if he sold the building himself he would still be liable for the commission. Dahl argues that the listing agreement should be interpreted in accord with Dahl's and Griffin's own understanding and that the superior court's grant of summary judgment was erroneous. Griffin contends that the contract language is clear and unambiguous[3] and that his right to sell the property

---

1. The entire exchange on this point between Griffin and counsel for Dahl reads as follows:

   Q. Now when you use the term exclusive listing, what is your understanding of the meaning of the term?
   A. Well, I guess exclusive means, you know, they're the only ones·with the listing.
   Q. That's your understanding of the term?
   A. I guess, you know, whoever sells it, they're still entitled to make something off it, because, you know . . .
   Q. Is it your understanding of the term that exclusive listing means that the person who has the exclusive listing is the only one that can sell the building?
   A. No.
   Q. Well, what is your understanding of the term?
   A. Anyone can sell it, and the one with the exclusive listing, if they're a realtor, they're still entitled to make a commission off it.
   Q. Okay. So it's your understanding that anybody can sell the building, but if there's a real estate agent with exclusive listing on it, he's entitled to a commission?

   A. That's the way I understand it.
   Q. Okay. So in other words, if you sold the building, and there was an outstanding exclusive listing with a real estate agent, you would assume that you'd be obligated to pay a commission to the real estate agent?
   A. That's the way I understand it.

2. The superior court found that the listing agreement granted Dahl an "exclusive agency" rather than an "exclusive right to sell." Under an "exclusive right to sell" contract an owner is precluded, during the term of the listing period, from selling the property by himself or through another broker. An "exclusive agency" contract, however, merely precludes the sale of the property through another broker; the owner retains the right to sell the property himself without incurring any liability to the broker. Annot., 88 A.L.R.2d 936, 940 (1963).

3. Griffin asserts that while the contract stated that Dahl was granted "the exclusive right to sell said property," the agreement provided that the commission would be paid only "[i]n the event the said agent shall find a purchas-

himself without paying a commission cannot be challenged through resort to extrinsic or parol evidence.

The pertinent facts in this case are as follows. First, Dahl and Griffin signed a "Listing Agreement" in which Griffin gave Dahl "the exclusive right to sell" Griffin's property until February 1, 1980 and promised that if Dahl was able to find a buyer, Griffin would pay him a commission of $25,-000. Second, Griffin's deposition testimony indicates that he understood that an "exclusive listing agreement" meant that the agent was entitled to make a commission regardless of who sold the property prior to the expiration of the listing. Third, Griffin sold the property on his own prior to the expiration of the listing and refused to pay Dahl any commission.[4] The issue is whether on these "facts" the superior court's grant of summary judgment to Griffin was appropriate.

In its decision, the superior court ruled that in order to create an "exclusive right to sell" the agreement must contain unequivocal language precluding the owner from selling the property unless a commission is paid to the agent. This issue has been frequently litigated and many of the cases are collected in an annotation, *"Exclusive Right to Sell" and Other Terms in Real-Estate Broker's Contract as Excluding Owner's Right of Sale*, 88 A.L.R.2d 936 (1963). The annotation summarizes the cases as follows:

The ordinary rule is that an owner is precluded from selling the property himself while bound by a contract granting the broker an exclusive right to sell—for a term at least—as distinguished from contracts granting merely an exclusive agency, which are universally recognized to preclude, at most, the sale of the property through another broker. The rule is thus stated at the outset, because of the large amount of lip service paid to it. However, an analysis of the cases collected in this annotation demonstrates that it is very nearly devoid of any practical meaningfulness. . . . The more effective rule for putting an end to this fiction would be the rule which is in fact implied by the results in the overwhelming majority of cases, but less frequently stated, that an owner's right of sale, entirely on his own efforts, is not excluded unless expressly negatived by the contract.

*Id.* at 940–41 (footnotes omitted). Under an "unless expressly negatived by the contract" rule, Dahl would not be entitled to a commission unless the agreement specifically stated that he was to receive a commission even if Griffin sold the property. The purpose of this rule is to provide a clear signal to the parties that the owner is giving up his right to sell his own property.[5]

Whatever the merits of this rule, we think that it would be applicable only where the parties disagree as to the effect of the listing agreement. If both parties agree that the effect of the agreement was to

---

er. . . ." Since Griffin sold the property through his own efforts, he claims that Dahl did not satisfy the express condition that Dahl find a purchaser for the property and, therefore, that Dahl is not entitled to any commission.

4. Griffin testified in his deposition that his first contact with the buyer came on February 4, 1980, after the listing with Dahl had expired. Dahl filed an affidavit in which he averred that Griffin had entered into a contract for the sale of the property prior to the expiration date. On Griffin's motion for summary judgment, this conflict must be resolved in Dahl's favor, since in ruling on a motion for summary judgment we are required to draw all reasonable inferences of fact in favor of the party opposing the motion. *Clabaugh v. Bottcher*, 545 P.2d

172 (Alaska 1976); *Nizinski v. Golden Valley Elec. Ass'n, Inc.*, 509 P.2d 280 (Alaska 1973).

5. In *Foltz v. Begnoche*, 565 P.2d 592, 597 (Kan. 1977), the Kansas supreme court stated:

Additionally, we are persuaded that an 'exclusive right to sell,' by its very nature, should be created only by clear and unambiguous language. The owner of property, frequently unfamiliar with the terminology of brokerage transactions, should not be held to give up his right to sell his own property, unless the broker's contract in some way or other imposes liability upon the owner for payment of a commission in the event of a sale by the owner, either expressly or by the grant to the broker of such exclusive right as the court may deem necessarily implies such liability.

grant an "exclusive right to sell," there is no need to resort to the special rule set out in the annotation.[6] In this case, Dahl's position is that the listing agreement entitled him to a commission even if Griffin sold the property. Griffin's deposition testimony indicates that he also believed that he would be liable for a commission if he sold the property during the listing period. In light of this mutual understanding as to the effect of the agreement, we conclude that the superior court's grant of summary judgment was erroneous.[7]

 Griffin argues that his deposition statements are extrinsic or parol evidence, inadmissible to explain or construe the language in the listing agreement. Griffin's reliance on the parol evidence rule to bar the introduction of his own admissions is mistaken since the parol evidence rule applies only to antecedent understandings or negotiations,[8] not to subsequent statements regarding a party's understanding of the language or intent of the agreement. Our consideration of Griffin's deposition testimony is also consistent with our most recent decision regarding the admissibility of extrinsic evidence to interpret a contract. In the past, we stated or implied that resort to extrinsic evidence could only come after a preliminary finding of ambiguity. *Tsakres v. Owens,* 561 P.2d 1218, 1221–22 (Alaska 1977); *Hendricks v. Knik Supply, Inc.,* 522 P.2d 543, 546 (Alaska 1974). In *Alyeska Pipeline Service Company v. O'Kelley,* 645 P.2d 767, 771 n. 1 (Alaska 1982), we discarded this two-tiered approach and held

that a court may initially turn to extrinsic evidence in construing a contract. Griffin's testimony is relevant evidence of the parties' intent and is admissible to interpret the listing agreement.

 Finally, we reject Griffin's contention that the terms of the agreement clearly establish that Dahl was entitled to a commission only if Dahl personally found a buyer. The listing agreement may reasonably be interpreted as providing that Dahl would enjoy the exclusive right to sell Griffin's property and, if successful, would receive a $25,000 commission. While this language could be subject to differing interpretations, including Griffin's, we are convinced by Griffin's testimony that he understood that he was entering an exclusive right to sell agreement.

For these reasons, we conclude that the summary judgment must be reversed and direct that partial summary judgment should be entered for Dahl on the issue of whether the listing agreement granted Dahl the exclusive right to sell Griffin's property. The case is remanded for resolution of the remaining issues.[9]

REVERSED and REMANDED.

---

**6.** The general rule is that a contract should be interpreted so as to give effect to the intent of the parties. *Wright v. Vickaryous,* 598 P.2d 490 (Alaska 1979); *Griffin v. United Bank of Denver,* 599 P.2d 866 (Colo.1979). Where the parties disagree as to the intent of the agreement, then the court seeks to enforce the interpretation which is reasonable in light of the terms and circumstances. Where the parties are in accord, however, there is no room for judicial interpretation and the court's assessment of the reasonableness or ambiguity of the agreement is irrelevant, absent considerations of public policy or third party interests. *See In re Estate of Hollingsworth,* 88 Wash.2d 322, 560 P.2d 348, 350–51 (1977).

**7.** If we were to affirm, we would in effect be announcing a rule that regardless of the intent of the parties an "exclusive right to sell" agreement will not be enforced, unless it specifically states that the seller agrees to pay a commission if he sells the property himself.

**8.** *See Johnson v. Curran,* 633 P.2d 994, 995 n. 1 (Alaska 1981).

**9.** As stated previously it still must be determined whether Griffin's sale of the property occurred during the period of the listing agreement. *See* note 4, *supra.* In addition, Griffin contends that there remains a question of whether Dahl used due diligence to find a purchaser for the property.