JUSTICE RICE
dissenting.
¶49 I dissent. In its zeal to reach an equitable result, the Court has failed to properly apply the law.
¶50 The Court does not cite to, or even mention, a single finding of fact entered by the District Court in support of the conclusion that the corporate entity here was used as a “subterfuge to defeat public convenience, justify wrong or perpetuate fraud,” Berlin v. Boedecker (1994), 268 Mont. 444, 458, 887 P.2d 1180, 1188, the second prong of the law’s requirement (Issue IB). The Court cannot do so because none were made by the District Court. Therefore, the Court purports to render its own findings of fact, which it bases upon “suggestion” (¶ 35), “inference” (¶ 36), and “appearances” (¶ 38), in order to avoid reversing an unsupported, and therefore erroneous, conclusion because “[a]s noted by the District Court, such a result would be inequitable.” ¶ 38. Failing in our duty to correctly apply the law so that an inequitable result can be avoided is itself inequitable to all who rely on the law. ¶51 I agree that the District Court properly concluded that Colonna was the alter ego of the corporation, the first prong of the piercing test (Issue 1A). Indeed, all of the findings entered by the District Court provided factual support of the “alter ego” prong, notably, the lack of corporate meetings and minutes (Finding #5 and #9), Colonna’s status as sole shareholder, director and officer (Finding #8), lack of documentation of the corporate decision to terminate the rental agreement (Finding #9), Colonna’s failure to keep corporate obligations separate from personal obligations (Finding #11), failure to document corporate decisions (Finding#12), failure to document Colonna’s status as an employee of the corporation (Finding #13), three financial transactions suspected to be arms-length transactions between Colonna and the corporation (Finding #14), failure to document annual shareholder and director meetings (Finding #15), Colonna’s total control over the corporation (Finding #16), that Colonna and the corporation engaged in the same business (Finding #17), that the corporation was undercapitalized (Finding #18), and that the corporation was “devoid of assets” (Finding #20). Although Colonna aggressively contests many of these findings on appeal, I do not find a basis to reverse them under our deferential standard of review on factual questions.
¶52 It is important to note, as the Court briefly mentions, that Colonna’s professional corporation was not organized pursuant to the *140 Montana Close Corporation Act, § 35-9-101, et seq., MCA. That Act authorizes a corporation organized thereunder to operate without observing “the usual corporate formalities or requirements relating to the exercise of its corporate powers,” such as a board of directors, bylaws and annual meetings, and the failure to observe such formalities “is not a ground for imposing personal liability on the shareholders for liabilities of the corporation.” Section 35-9-306, MCA. The legal analysis, and the effect of many of the District Court’s above-referenced findings of fact regarding the absence of corporate formalities, would be much different if a statutory close corporation was at issue here.
¶53 The Court attempts to read support for the second prong of the test into the District Court’s findings of fact, but does so erroneously. Referencing the District Court’s finding that the corporation was undercapitalized, the Court makes comparison with ECA Environmental Management Services, Inc. v. Toenyes (1984), 208 Mont. 336, 679 P.2d 213. In Toenyes, the trial court found that MMI, a parent company to ECA Environmental, took the assets from ECA Environmental, and concluded that ECA Environmental had “been controlled and used by MMI to avoid its contractual obligation with [Toenyes].” Toenyes, 208 Mont. at 345, 679 P.2d at 218.
¶54 The Court concludes therefrom that “[t]his is similar to what happened in the present case-the Corporation is incapable of satisfying the judgment against it because it was undercapitalized from its inception, suggesting that Colonna acted in bad faith.” ¶ 35. However, the distinctions which make Toeynes inapplicable are obvious from the Court’s own words. In Toenyes, ECA Environmental had not been undercapitalized “from its inception,” but rather, was made that way by its parent company only to avoid debt. Here, there is no finding that Colonna placed the corporation into a state of undercapitalization in order to avoid a known debt. To the contrary, the District Court found that Colonna had transferred $190,000 into the corporation by way of personal loans.
¶55 Nonetheless, the Court finds that bad faith is “suggested” merely because the corporation “was undercapitalized from its inception.” If “bad faith” means that a corporation undercapitalized from its inception has incurred debt which it may not be able to repay, then I suggest that the owners of countless start-up and young enterprises are acting in “bad faith” and will be surprised to learn that these circumstances could expose them to personal liability. Being “undercapitalized from its inception” is a common business problem and does not necessarily infer improper motives on the part of the *141 corporation’s principals.
¶56 In fact, our law requires more to establish bad faith. In Stromberg v. Seaton Ranch Co. (1972), 160 Mont. 293, 502 P.2d 41, also relied upon by the Court, the district court concluded that the defendant had acted in bad faith only after first finding that she had “exhibited an intention and design to exclude Matt Brown from further negotiations for the sale of the Seaton ranch to the Glacier Colony for the purpose of avoiding the payment of a real estate commission ....” Stromberg, 160 Mont. at 304, 502 P.2d at 47. Consistent therewith, we have also held that the absence of such a devious pre-debt design is fatal to a claim to pierce the corporate veil: “The control and ownership the Pearl Company exercised over relators existed prior to the violation alleged and it cannot be said that ownership and control was intended as a means to escape the law, perpetrate fraud, or justify wrong.” State ex. rel. Monarch Fire Ins. Co. v. Holmes (1942), 113 Mont. 303, 309, 124 P.2d 994, 997.
¶57 The failure of the District Court to find the facts necessary to support the second prong of the test should not be remedied by factfinding by this Court. Because the record does not contain facts necessary to support the judgment, I would reverse.
CHIEF JUSTICE GRAY and JUSTICE NELSON join in the dissent of JUSTICE RICE.